# United States Court of Appeals for the Federal Circuit

2007-3167

JULIE K. JOHNSTON,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent.

Jacob A. Kramer, Bryan Cave LLP, of Washington, DC, argued for petitioner. With him on the brief was Daniel C. Schwartz.

Michael A. Carney, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, argued for respondent. With him on the brief were B. Chad Bungard, General Counsel, and Rosa M. Koppel, Deputy General Counsel.

Appealed from: Merit Systems Protection Board

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2007-3167

JULIE K. JOHNSTON,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent.

Petition for review of the Merit Systems Protection Board in AT1221060983-W-1.

_____

DECIDED:   March 3, 2008

_____

Before NEWMAN, MAYER and GAJARSA, <u>Circuit Judges</u>.

MAYER, <u>Circuit Judge</u>.

Julie K. Johnston seeks review of a final decision of the Merit Systems Protection Board dismissing her appeal for lack of jurisdiction.  <u>Johnston v. Dep't of Energy</u>, AT-1221-06-0983-W-1 (M.S.P.B. Nov. 2, 2006).  Because we conclude Johnston's allegations of reprisal for disclosures protected under the Whistleblower Protection Act of 1989 ("WPA"), 5 U. S. C. § 2302(b)(8), were sufficient to establish board jurisdiction, we reverse and remand.

## <u>Background</u>

Johnston is employed as a Safety and Occupational Health Manager ("SOHM") in the Office of Secure Transportation of the National Nuclear Security Administration in

the Department of Energy (the "agency"). The agency's mission is to safely transport nuclear weapons and other nuclear materials. Agency employees are heavily armed and trained to safeguard nuclear weapons from attack by terrorists and other criminals.

As a SOHM, Johnston has extensive safety training and experience. In January 2006, she became aware that her supervisors planned to implement Policy 7.04a, which would take safety management responsibilities away from SOHMs and delegate them to other agency employees, known as Command Safety Representatives ("CSRs"). Johnston alleges that in January and February 2006, she "continually voiced to her supervisor, Dean Triebel, her concerns that under [proposed Policy 7.04a] responsibility for safety management would be delegated to personnel who lacked appropriate education and experience in safety management." On January 28, 2006, Triebel sent an email asking Johnston and other employees to review proposed Policy 7.04a. In response, on February 21, 2006, Johnston sent an email to Triebel and several others, some of whom worked outside her branch of the agency, expressing her dissatisfaction that under the proposed policy her job description and job responsibilities would be changed. She also "question[ed] the legality and the ethics" of the proposed policy.

On February 24, 2006, Johnston had a meeting with Triebel and another supervisor, Joseph Vigil. Johnston alleges that in this meeting she informed her supervisors she intended to communicate her criticisms of the proposed policy to the Department of Energy's Office of Inspector General ("OIG"). Johnston further alleges that her supervisors orally reprimanded her for voicing her concerns about proposed Policy 7.04a, and told her that she had "damaged [her] reputation beyond repair" by sending the February 21, 2006 email to persons outside her chain of command.

Soon thereafter, Johnston contacted the OIG, which summarized her disclosures as follows:

> Reliance on untrained safety personnel to review training lesson plans could put [agency personnel] and personnel from other agencies at risk for serious injury. [The agency] regularly conducts training exercises with rigorous physical activities and often with live fire and explosives. Training is conducted during periods of extreme heat and humidity, or exceptional cold weather. Fog, dust, sleet, high winds, snowfall, or rainfall can impair a trainee's vision, footing, and ability to manipulate a weapon, creating a potential safety hazard to both the trainee and those nearby. Additionally, [agency employees] routinely conduct joint testing exercises with other agencies, which add[s] to the complexity and safety hazards of the training exercise. The serious injury that occurred in 2002 underlines the risk that can arise from using untrained personnel to perform safety reviews.

Memorandum from Christine Shafik, Department of Energy Office of Inspections and Special Inquiries (March 13, 2006) [hereinafter *OIG Memorandum*].

On March 1, 2006, Triebel issued a "counseling memorandum" to Johnston, stating that she had "demonstrated inappropriate conduct by sending out an email [regarding proposed Policy 7.04a] to members of [the agency] who were not associated with the issues." On March 15, 2006, Johnston received a revised performance plan. She alleges that this revised plan substantially reduced her training and safety management responsibilities and caused her to be "effectively demoted."

Johnston subsequently filed a formal letter of complaint with the OIG, further articulating her concerns regarding the dangers of the proposed policy. See Letter of Complaint from Julie Johnston to the OIG (March 17, 2006) [hereinafter *Letter of Complaint*]. In this letter, Johnston stated that "safety is not a popular sport . . . . [I]t is not about being on the right team . . . . [I]t is about doing the right thing, even when it is not the popular choice." Id. at 2. She explained that she felt it was her "obligation . . . as a safety professional" to move forward with her complaints about the agency's plan

to delegate safety management responsibilities to personnel whom she believed lacked adequate training and experience.  Id.

Soon thereafter, Johnston filed a complaint with the United States Office of Special Counsel, in which she alleged that accidents had occurred in training exercises in November 2002, January 2003 and November 2004 because of "flaws in the risk assessment procedures."  See Letter from Matthew C. Glover, U.S. Office of Special Counsel (June 20, 2006) [hereinafter *Special Counsel Letter*].  After exhausting her administrative remedies at the Office of Special Counsel, see 5 U.S.C. § 1214(a)(3), Johnston appealed to the Merit Systems Protection Board, alleging that the agency had retaliated against her for engaging in protected whistle-blowing activity.  The administrative judge dismissed her appeal for lack of jurisdiction, concluding that her disclosures were not protected by the WPA because they did not identify a substantial and specific threat to public safety.  The administrative judge's initial decision became the final decision of the board on February 9, 2007.  Johnston timely appealed to this court; we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

### Discussion

The board's jurisdiction is not plenary, but is limited to those matters over which it has been granted jurisdiction by law, rule or regulation.  Herman v. Dep't of Justice, 193 F.3d 1375, 1378 (Fed. Cir. 1999).  Whether the board has jurisdiction over an appeal is a question of law that this court reviews de novo.  Yates v. Merit Sys. Prot. Bd., 145 F.3d 1480, 1483 (Fed. Cir. 1998); Fields v. Dep't of Justice, 452 F.3d 1297, 1301 (Fed. Cir. 2006).

Johnston argues that the board erred in dismissing her appeal; she contends she established board jurisdiction by non-frivolous allegations that she suffered reprisal for expressing her opinion that the agency's implementation of Policy 7.04a would put agency personnel and others at risk for serious injury. We agree.

There is a fundamental distinction between the requirements necessary to prevail on the merits of a WPA claim and those sufficient to establish board jurisdiction. To prevail on the merits, an employee must establish, by a preponderance of the evidence, that a protected disclosure was a contributing factor in an adverse personnel action. See Marano v. Dep't of Justice, 2 F.3d 1137, 1140 (Fed. Cir. 1993). At the jurisdictional threshold, however, the employee's burden is significantly lower: for individual right of action appeals "the Board's jurisdiction is established by nonfrivolous allegations that the [employee] made a protected disclosure that was a contributing factor to the personnel action taken or proposed." Stoyanov v. Dep't of the Navy, 474 F.3d 1377, 1382 (Fed. Cir. 2007) (citing Garcia v. Dep't of Homeland Sec., 437 F.3d 1322, 1325 (Fed. Cir. 2006) (en banc)). Thus, Johnston could establish a jurisdictional predicate for her claims by making non-frivolous allegations that: (1) her disclosures were within the purview of the WPA, and (2) she suffered reprisal in the wake of these disclosures.

I. Protected Disclosures

The WPA protects several types of communications, one being a disclosure regarding what an employee "reasonably believes" to be a "substantial and specific danger to public health or safety."[1] 5 U.S.C. § 2302(b)(8); Herman, 193 F.3d at 1378-

---

[1] The WPA prohibits taking any adverse personnel action because of "any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—(i) a violation of any law, rule, or regulation, or (ii) gross

79. Johnston alleges she made such a disclosure; we deem her allegations non-frivolous.

The disclosures made by Johnston were precise and unambiguous: she asserted that using inadequately trained personnel to review agency training exercises would increase the danger of serious injury to those conducting the exercises as well as others in the vicinity. Training exercises are designed to simulate attacks on nuclear weapons by terrorists and other criminals, and Johnston explained that they routinely involve the use of live fire and explosives. She further explained that training activities frequently take place under extreme weather conditions where "[f]og, dust, sleet, high winds, snowfall, or rainfall can impair a trainee's vision, footing, and ability to manipulate a weapon, creating a potential safety hazard to both the trainee and those nearby." *OIG Memorandum* at 2. In addition, Johnston noted that agency employees "routinely conduct joint testing exercises with other agencies, which add[s] to the complexity and safety hazards of the training." Id. She buttressed her claims regarding the dangers inherent in training activities by referring to a series of accidents, some of them serious, which had occurred during such activities in the past. Id.; *Special Counsel Letter* at 2.

Johnston disclosed a very specific and substantial danger—that agency employees and others in the vicinity could suffer serious injury if inadequately trained personnel were charged with responsibility for managing training activities. Her beliefs were objectively reasonable, not only because training exercises take place under extreme weather conditions and routinely involve the use of live fire and explosives, but

---

mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety . . . ." 5 U.S.C. § 2302(b)(8)(A).

also because a series of accidents had occurred during such exercises in the past.[2]

See LaChance v. White, 174 F.3d 1378, 1381 (Fed. Cir. 1999) (the standard for determining whether an employee's beliefs are reasonable under the WPA is an objective one). It is important to note, moreover, that Johnston expressed her fears not only to her immediate supervisors, but also made very detailed disclosures regarding her safety concerns to her agency's Office of Inspector General. See Willis v. Dep't of Agric., 141 F.3d 1139, 1143 (Fed. Cir. 1998) (no protection under the WPA when disclosures were not made to "authorities who were in a position to correct the alleged wrongdoing").

Johnston's disclosures are not the sort of vague, conclusory or facially insufficient allegations of government wrong-doing that fail to provide an adequate jurisdictional predicate under the WPA. See Herman, 193 F.3d at 1380-81 (board had no jurisdiction under the WPA for the disclosure of "trivial" violations of agency rules); Fields, 452 F.3d at 1304 (board had no jurisdiction under the WPA where a disclosure "was simply a chronology of events that did not contain any allegation of wrongdoing"). To the contrary, her allegations involve the sort of detailed and facially well-supported disclosures that have been deemed sufficient to support board jurisdiction. See Reid v. Merit Sys. Prot. Bd., 508 F.3d 674 (Fed. Cir. 2007) (jurisdiction established where employee had a "reasonable belief" that a potential violation of law could occur even

---

[2] The government argues that Johnston waived her right to present evidence about prior accidents because she failed to present arguments regarding such accidents to the board. The government's contentions are unpersuasive. The prior accidents were discussed in the *OIG Memorandum* and the *Special Counsel Letter*, both of which were attached as exhibits to Johnston's initial appeal. Indeed, the administrative judge referred to the *OIG Memorandum* several times in her initial decision. See Johnston, slip. op. at 3-5.

where the violation never actually occurred); <u>Yunus v. Dep't of Veterans Affairs</u>, 242 F.3d 1367, 1372 (Fed. Cir. 2001) (allegations were "facially sufficient" to establish jurisdiction where factual underpinnings of claim were "not frivolous"); <u>see also</u> <u>Eidmann v. Merit Sys. Prot. Bd.</u>, 976 F.2d 1400, 1406-07 (Fed. Cir. 1992) (employee "reasonably believed" his agency violated a no-smoking ban where regulations prohibited smoking in public areas).

## II. Distinction between Substantive and Jurisdictional Determinations

In dismissing Johnston's claims, the board erroneously conflated the requirements for establishing jurisdiction with those required to prevail on the merits of a WPA claim. <u>See</u> <u>Spencer v. Dep't of the Navy</u>, 327 F.3d 1354, 1356 (Fed. Cir. 2003) ("This court for more than ten years . . . has tried to get the Board to clearly separate the issue of jurisdiction from that of the merits of a petitioner's case."); <u>Spruill v. Merit Sys. Prot. Bd.</u>, 978 F.2d 679, 686-89 (Fed. Cir. 1993) (contrasting jurisdiction with failure to state a claim and relating the nonfrivolous allegation standard to the well-pleaded complaint rule). The board premised its jurisdictional determinations on its conclusion that the "general tenor of [Johnston's] communications appears to be disagreement with the agency's decision to strip her of duties and to put her at the same level as others she deems less qualified in safety matters." <u>Johnston</u>, slip op. at 5.

There are two reasons why this determination was wrong. First, while Johnston's February 21, 2006, email to her supervisor focuses primarily on the fact that her own job description was being changed, her disclosures to the OIG contained detailed information regarding her concerns that proposed Policy 7.04a would delegate

safety management responsibilities to unqualified personnel, thereby putting agency personnel and others at risk for serious injury. <u>See</u> *OIG Memorandum* at 1-2.

Second, and more importantly, Johnston's motivation for making her disclosures and her credibility are related to the merits of her claim, not to whether she made allegations sufficient to support board jurisdiction. <u>See</u> <u>LaChance</u>, 174 F.3d at 1381 (bias or self-interest may be considered when adjudicating the *merits* of a WPA claim). It may be true that Johnston's communications primarily involve dissatisfaction with her job assignments, and that she may be unable to establish, by a preponderance of the evidence, that she suffered reprisal for any protected disclosure. It is also possible that the agency can defeat her claims by showing, by clear and convincing evidence, that it would have taken adverse personnel actions against her even absent any protected disclosures. <u>See</u> <u>Marano</u>, 2 F.3d at 1141 (once an employee has established the existence of a personnel practice prohibited by the WPA, "the burden then shifts to the agency to demonstrate by clear and convincing evidence that it would have taken the same personnel action against the whistleblower even in the absence of his protected disclosure"). Whether she will ultimately be able to prevail on the merits, however, is a wholly separate issue from whether the board had jurisdiction over her appeal. <u>See</u> <u>Bell v. Hood</u>, 327 U.S. 678, 682 (1946) (claims regarding jurisdiction cannot be defeated by the possibility that the plaintiffs may not ultimately recover); <u>see also</u> <u>Patterson v. Dep't of the Interior</u>, 424 F.3d 1151, 1160 (Fed. Cir. 2005).

On appeal, the government acknowledges that an "employee is entitled to a hearing if she presents a non-frivolous allegation that the Board has jurisdiction over her [claims]." Respondent Brief at 11. It contends, however, that Johnston's allegations are

frivolous because it was "unreasonable" for her to believe that it was dangerous to employ CSRs, rather than SOHMs, to review agency training exercises. In support, it points out that CSRs would be given training and would be supervised by a CSR team leader.

This argument misses the mark. Johnston asserted that SOHMs have far more safety expertise than CSRs, and she was not required to prove conclusively that CSRs were incapable of properly reviewing training activities in order to establish board jurisdiction. On the contrary, under the WPA, "whether [an] allegation can be proven is a question on the merits that does not properly form a part of the jurisdictional inquiry." Reid, 508 F.3d at 678; Greenspan v. Dep't of Veterans Affairs, 464 F.3d 1297, 1305 (Fed. Cir. 2006) (government doctor reasonably believed his disclosures evidenced misconduct, even when others at his agency thought his allegations were "unfounded"). Indeed, since Johnston's appeal was dismissed before she was given access to the agency's file on her case or provided with an opportunity to conduct discovery, it would have been well-nigh impossible for her to prove that CSRs lacked the requisite training and experience to safely review training activities.

There are few areas more fraught with potential peril to public safety than the transport of nuclear weapons. Johnston has been employed for several years as a safety and health expert at the agency charged with transporting the nation's nuclear stockpile, so it takes more than the government's mere contention that her allegations regarding safety issues are "frivolous" to dismiss at the jurisdictional stage of the proceedings.

III. Reprisal

As noted, to carry her jurisdictional burden Johnston was required to make non-frivolous allegations not only that she made a protected disclosure, but also that such disclosure was a contributing factor in the agency's decision to take adverse personnel actions against her. Neither the administrative judge nor the board addressed whether she made non-frivolous allegations that her disclosures were contributing factors in any adverse personnel actions. Nor does the government address the issue here.

This court has made clear that a "whistleblower need only allege that the 'deciding official knew of the disclosure' and that the adverse action 'was initiated within a reasonable time of that disclosure' in order to make a prima facie case that the disclosure was a contributing factor in the adverse action." See Reid, 503 F.3d at 678 (citing 5 U.S.C. § 1221(e)(1)); see also Marano, 2 F.3d at 1142. Because Johnston alleges that she "was subjected to a reduction in her job responsibilities and [issued] a disciplinary memorandum just days after making her disclosures to the OIG," Petitioner Brief at 12 n.3, we see her allegations that her disclosures contributed to the agency's actions as non-frivolous.[3]

The board's jurisdiction does not normally extend to personnel decisions such as reductions in job responsibilities. See, e.g., Knollenberg v. Merit Sys. Prot. Bd., 953

---

[3] In an affidavit submitted to the board, Johnston states that she informed her supervisor, Triebel, that she was going to voice her safety concerns to the OIG shortly before she received the counseling memorandum and change in job responsibilities. Triebel, however, submitted an affidavit stating that he had no knowledge of the contents of Johnston's disclosure to the OIG when he issued the counseling memorandum. On remand, the board will have the opportunity to evaluate the evidence, make credibility determinations and ascertain whether Johnston's supervisors were aware of the contents of her disclosures to the OIG at the time the adverse personnel actions were undertaken.

F.2d 623, 625 (Fed. Cir. 1992). Under the WPA, however, a very broad class of personnel actions falls within the board's jurisdiction. Ruggieri v. Merit Sys. Prot. Bd., 454 F.3d 1323, 1325 (Fed. Cir. 2006). Thus, changes in work duties and disciplinary action are personnel actions that are within the Board's jurisdiction if they resulted from disclosures protected by the WPA. 5 U.S.C. § 2302(a)(2); Reid, 508 F.3d at 678.[4]

## Conclusion

Accordingly, the decision of the Merit Systems Protection Board is reversed, and the case is remanded for further proceedings consistent with this opinion.

## COSTS

Costs to petitioner.

## REVERSED AND REMANDED

---

[4] At oral argument, counsel for Johnston stated that if she prevails in her WPA claim she seeks to "have her record cleared" by having the counseling memorandum she received after making her disclosures removed from her supervisory employee file. She also seeks to compel the agency to either: (1) give her back the job responsibilities she had prior to her disclosures, or (2) reassign her to another position at the agency to "escape the impact her disclosures" have had on her career.