NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WILLIAM B. GROSECLOSE,**
*Petitioner,*

**v.**

**DEPARTMENT OF THE NAVY,**
*Respondent.*

---

2011-3078

---

Petition for review of the Merit Systems Protection Board in consolidated case nos. SF1221080524-B-1 and SF1221080635-B-1.

---

Decided: January 20, 2012

---

WILLIAM B. GROSECLOSE, of San Luis Rey, California, pro se.

JOSHUA A. MANDLEBAUM, Trial Attorney, Commercial Litigation Branch, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E.

DAVIDSON, Director, and REGINALD T. BLADES, JR., Assistant Director.

_____

Before NEWMAN, LINN, and MOORE, *Circuit Judges.*

PER CURIAM.

William B. Groseclose ("Groseclose") appeals a final decision of the Merit Systems Protection Board ("Board") affirming the administrative judge's ("AJ") determination that Groseclose failed to establish a claim under the Whistleblower's Protection Act. Because the Board's findings are supported by substantial evidence, this court affirms.

## I. BACKGROUND

Groseclose worked for over four years, through February 2008, as a branch manager at the Department of the Navy's ("Navy" or "Agency") Integrated Combat Systems Test Facility ("ICSTF") at Port Hueneme in San Diego, California. Donald A. Potenza ("Potenza") was the site director at ICSTF and Groseclose's supervisor during this entire period. Potenza described Groseclose's duties to include managing personnel schedules, handling personnel actions, and assuring that ICSTF met its testing deadlines.

### A. First and Second Allegedly Protected Disclosures

In late 2007 through early 2008, Groseclose became concerned over an ongoing conflict between ICSTF employee Rick Merriman ("Merriman") and Merriman's supervisor Paul Salerni ("Salerni"), which led Merriman to disobey Salerni's orders on various occasions. In late January and early February 2008, Merriman called Groseclose at home to express his frustration with Salerni, and Groseclose perceived Merriman as being "pushed to the edge" and potentially suicidal. Groseclose

disclosed his concerns about Merriman to Potenza and Salerni on January 29. Potenza responded by immediately meeting with Salerni, Gary Lawrence ("Lawrence") of Human Resources ("HR"), and a union representative. Potenza, Lawrence, and Salerni decided it was still appropriate to reprimand Merriman for failing to follow Salerni's orders and they arranged for an in-person meeting with Merriman. Potenza testified to further reporting Groseclose's concerns to the appropriate authorities within the Agency, including ICSTF security and "higher command." Potenza also informed Groseclose that he had appropriately dealt with the matter.

Despite Potenza's actions, on February 5, 2008, Groseclose sent the first allegedly protected disclosure: an email to Potenza's direct supervisor Wesley Holser ("Holser") and Lawrence in HR, titled "!!!! EXTREME SAFETY ISSUE !!!!" in the subject line, and stating, *inter alia*, that "[Merriman] said suicide has crossed his mind," "[Merriman] feared that [] Salerni may use the illegal knife he carries," and "Potenza [is] unfit [as] a leader for endangering his workforce." Potenza learned of the email that day and called Groseclose, ordering him not to further involve himself in the situation and again explaining that he was handling the situation properly. Later that same afternoon, after Potenza's call, Merriman sent the second allegedly protected disclosure: another email to Holser and Lawrence to explain Potenza's communication with him and reiterate his beliefs that Merriman was potentially violent and that Potenza was not handling the situation properly. The next day, Stephen Mason ("Mason"), the ICSTF lead engineer and acting site director at the time, investigated Groseclose's concerns and concluded that Merriman was not dangerous to anyone and that Groseclose was only energizing and escalating the situation in a negative manner.

B. Third Allegedly Protected Disclosure

On February 5, 2008, the same day as the first two allegedly protected disclosures, Groseclose made the third allegedly protected disclosure, which was unrelated to the Merriman issue. This disclosure related to ICSTF support for testing of a certain naval combat system. In late 2007, ICSTF's sponsor, Naval Sea Systems Command ("NAVSEA"), decided to move this particular testing from ICSTF's facility to Wallops Island, Virginia. The testing was scheduled to begin in April 2008. Prior to that date, ICSTF was required to complete a "test bed validation." Groseclose and his project manager Mark Garcia ("Garcia") believed that a successful test bed validation required ICSTF personnel to integrate a warfare simulation system, the Common Scenario Control Environment ("CSCE"), at Wallops Island. Mason, the lead engineer, disagreed. In addition, Potenza had funding concerns regarding the CSCE integration that were based on contractual restrictions, which he communicated to Groseclose. Unbeknownst to Potenza or Mason, Groseclose and Garcia met with NAVSEA representatives in January 2008 to discuss NAVSEA support for implementing the CSCE at Wallops Island.

On February 5, 2008, Groseclose sent an email to Viviane Deering ("Deering"), the NAVSEA representative on the project, stating that ICSTF was "seek[ing] NAVSEA guidance on providing CSCE support at Wallops Island." Groseclose copied lead engineer and acting supervisor Mason on this email. This was the first time Mason learned of Groseclose's earlier contacts with NAVSEA, and Mason disagreed with Groseclose's message. Mason quickly replied to the email directing Groseclose not to contact NAVSEA without his clearance and asking him to recall the email. Groseclose recalled the email and replied to Mason with another email stating that he disagreed with Mason and saw nothing "wrong with seeking specific guidance with respect to the support

our sponsor expects us to provide." In so replying, Groseclose blind-carbon copied Deering from NAVSEA on his email to Mason expressing his disagreement with Mason's approach to the CSCE issue. Groseclose's blind-carbon copied email to Deering is the third allegedly protected disclosure.

## C. Challenged Personnel Actions

On February 8, 2008, after Mason and Potenza learned of the blind carbon copy incident, Potenza engaged in the following challenged personnel actions: (1) the removal of Groseclose from computer access to prevent him from further contacting NAVSEA against orders; (2) the reassignment of Groseclose from his supervisory branch manager position to a nonsupervisory position in the same pay grade; and (3) a proposed a five-day suspension, which the department manager, Holser, approved, but only for two days. Potenza testified that he believed this to be the minimum punishment required to correct Groseclose's insubordinate behavior. Potenza and Mason testified that Potenza's insubordination jeopardized ICSTF by making ICSTF appear indecisive and unreliable in performing testing operations for NAVSEA. According to Potenza, NAVSEA was the "life blood" of ICSTF, and if NAVSEA ceased to use ICSTF as its testing facility, it would be detrimental to ICSTF and its personnel. With respect to Groseclose's reassignment, Holser indicated that it was appropriate because management officials are "expected to exercise prudent judgment and follow direction, neither of which [Groseclose] did."

## D. Groseclose's Earlier Protected Disclosures

In 2007, in a separate action, the Board determined that Groseclose had made protected disclosures from 2003 through 2006 about his supervisor at the time, Donna Bedford ("Bedford"), who engaged in prohibited activity by, *inter alia*, abusing her authority to accommodate a retiring ICSTF employee in an independent contractor

position; however, the Board concluded that Groseclose failed to establish that these disclosures contributed to any of the personnel actions he raised, and this court affirmed. *Groseclose v. Dep't of the Navy*, M.S.P.B. No. SF-1221-06-0368-W-1 (Apr. 15, 2007), *affirmed by* 277 F. App'x 1019 (Fed. Cir. 2008). In this case, Groseclose alleges that Potenza was the "retiring ICSTF employee" that Bedford inappropriately accommodated, and that this contributed to his challenged personnel actions here.

### E.  Proceedings Below

In September 2007 and August 2008, Groseclose filed two individual right of action appeals alleging whistle-blower reprisal with regard to various disclosures and personnel actions, including those discussed above, which are still at issue in this appeal. The Board originally dismissed both appeals, but on review, the Board determined that it possessed jurisdiction, reversed both dismissals, and consolidated and remanded the appeals. *Groseclose v. Dep't of the Navy*, 111 M.S.P.R. 194 (2009). On remand, the AJ concluded that Groseclose's three February 5, 2008, emails were not protected disclosures and that the earlier protected disclosures were not related to the challenged personnel actions, and thus affirmed the Agency's personnel actions. *Groseclose v. Dep't of the Navy*, Nos. SF-1221-08-0524-B-1 and SF-1221-08-0635-B-1, slip op. at 10, 12, 27 (Apr. 20, 2010) ("*Initial Decision*"). The Board denied Groseclose's petition for review. *Final Decision* (Dec. 3, 2010). *Groseclose* appealed, and this court has jurisdiction under 5 U.S.C. § 7703(b)(1) and 28 U.S.C. § 1295(a)(9).

## II. DISCUSSION

This court's review of a Board decision is limited. This court must affirm a decision of the Board unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without

procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

Section 2302(b)(8) of the Whistleblower Protection Act provides that:

> Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—

> (8) take or fail to take . . . a personnel action with respect to any employee . . . because of—

> (A) any disclosure of information by an employee . . . which the employee . . . *reasonably believes* evidences –

>> (i) a violation of any law, rule, or regulation, or

>> (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety, if such disclosure is not specifically prohibited by law . . . .

5 U.S.C. § 2302(b)(8) (emphasis added). To assess whether an employee's belief is reasonable that his disclosures evidence a scenario covered under § 2302(b)(8)(A), a reviewing court must ask what "a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee" would reasonably believe. *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999). "A purely subjective perspective of an employee is not sufficient." *Id.* "The [Whistleblower Protection Act] is not a weapon in arguments over policy or a shield for insubordinate conduct." *Id.*

A. First and Second Allegedly Protected Disclosures

Groseclose argues that his February 5 emails to Holser and Lawrence disclosed what he reasonably believed to be a "substantial and specific danger to public health and safety." According to Groseclose, Salerni may have been carrying a knife, and Merriman and Salerni were likely to engage in violence or harm themselves. The Agency counters that Groseclose fabricated or exaggerated his concerns in the emails, and that even if Groseclose did believe he was disclosing a substantial and specific danger to public health and safety, this belief was not reasonable.

The AJ's and the Board's conclusion that these emails were not protected disclosures is supported by substantial evidence. Merriman testified that he never told Groseclose that he was contemplating suicide, never told Groseclose that he was going to hurt himself, and never said anything indicating that he would hurt Salerni or anyone in the Agency. Even if Groseclose believed that Merriman was suicidal, this belief was not reasonable.

With respect to Salerni's alleged knife, Potenza testified that when Groseclose expressed his concern about the conflict between Merriman and Salerni prior to the February 5 email, he never expressed concern about Salerni carrying a knife. It was not until the email to Potenza's supervisor accusing Potenza of being "unfit [as] a leader for endangering his workforce" that Groseclose first mentioned this supposed concern. Groseclose alleges no viable reason to believe that he was truly concerned about Salerni carrying a knife or that he believed Salerni would actually use the knife.

## B. Third Allegedly Protected Disclosure

Groseclose argues that his February 5 blind-carbon copied email to Deering of NAVSEA disclosed evidence of "gross mismanagement." According to Groseclose, without support for the CSCE warfare simulation system at Wallops Island, the testing facility was going to fail. The Agency counters that Groseclose did not disclose gross mismanagement because (1) the information disclosed was already made known to NAVSEA in Groseclose's January 2008 in-person meeting with NAVSEA and (2) reasonable minds differed on the issue of how to provide support, or whether it was necessary to provide support, for the CSCE at Wallops Island.

The AJ's determination that Groseclose's email to Deering was not a protected disclosure is supported by substantial evidence. First, the AJ found that NAVSEA was already aware of Groseclose's views on the necessity of the CSCE system prior to the February 5 disclosure because Groseclose and Garcia met with NAVSEA representatives in January 2008 to discuss NAVSEA support for the CSCE system at Wallops Island. *Initial Decision* at 28. Moreover, the AJ found that even if Groseclose disclosed different information in the February 5 email, he did not disclose gross mismanagement; he only disclosed that the ICSTF managers disagreed with one another about the proper course of action for implementing the CSCE system. *Id.* at 30. As the AJ correctly found, a reasonable person in Groseclose's position would understand that contractual funding restrictions, of which Groseclose was aware, were legitimate reasons for the Agency to temporarily delay support for a project. *Id.* at 31.

C.  Groseclose's Earlier Protected Disclosures

Groseclose argues that his earlier protected disclosures contributed to Potenza's challenged personnel actions in this case.  According to Groseclose, Potenza was the retiring employee that his former supervisor Bedford had inappropriately helped to employ post-retirement, and thus his earlier disclosure of that information contributed to Potenza's later challenged personnel actions.  For the reasons discussed above, substantial evidence supports the AJ's findings that the challenged personnel actions resulted not from Groseclose's past conduct but directly and solely from Groseclose's insubordination, which Potenza believed jeopardized ICSTF's relationship with NAVSEA.

The court has thoroughly considered Groseclose's other arguments and concludes that they lack merit.

III. CONCLUSION

For the foregoing reasons, this court affirms the decision of the Board.

**AFFIRMED**

COSTS

Each party shall bear its own costs.