NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**RUTH A. ETZEL,**
*Petitioner*

**v.**

**ENVIRONMENTAL PROTECTION AGENCY,**
*Respondent*

-------------------------------------------------

**RUTH A. ETZEL,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

---

2022-2050, 2022-2051

---

Petitions for review of the Merit Systems Protection Board in Nos. DC-1221-19-0827-W-2, DC-3443-21-0391-I-1.

---

Decided: May 16, 2024

---

PAULA NAOMI DINERSTEIN, Public Employees for Environmental Responsibility, Silver Spring, MD, argued for petitioner. Also represented by PETER JENKINS.

BRYAN MICHAEL BYRD, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for Environmental Protection Agency. Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY, ELIZABETH ANNE SPECK; MERRICK COSEY, ALEXANDRA MEIGHAN, United States Environmental Protection Agency, Washington, DC.

DEANNA SCHABACKER, Office of General Counsel, United States Merit Systems Protection Board, for respondent Merit Systems Protection Board. Also represented by ALLISON JANE BOYLE, KATHERINE MICHELLE SMITH.

_____

Before LOURIE, DYK, and STARK, *Circuit Judges*.

STARK, *Circuit Judge*.

Dr. Ruth A. Etzel petitions for review of two final decisions of the United States Merit Systems Protection Board ("Board"). In the first decision, the Board found Dr. Etzel failed to show that she made a protected disclosure under the Whistleblower Protection Act ("WPA") contributing to an adverse personnel action. *Etzel v. EPA*, No. DC-1221-19-0827-W-2, 2022 WL 1204453 (M.S.P.B. Apr. 18, 2022). In the second decision, the Board determined that she failed to raise a nonfrivolous allegation of Board jurisdiction with respect to her pay reduction. *Etzel v. EPA*, No. DC-3443-21-0391-I-1, 2022 WL 1204454 (M.S.P.B. Apr. 18, 2022). We affirm.

# I

## A

Dr. Etzel, a pediatrician and environmental epidemiologist, was the Director of the Office of Children's Health Protection ("OCHP") at the United States Environmental Protection Agency ("EPA") from January 2015 to May 2019, a position in the Senior Executive Service ("SES"). While in that position, she participated in the development of the Federal Lead Strategy ("Strategy"), a comprehensive national plan designed to eliminate childhood exposure to lead. In early 2018, Dr. Etzel learned that the EPA did not want the Strategy to contain new enforcement measures and instead intended for it to repackage what was already being done. She considered this approach to be inadequate to ensure children would be protected from lead exposure. The Strategy was ultimately released as the "Federal Lead Action Plan" in December 2018.

On September 25, 2018, shortly before the release of the Strategy, Dr. Etzel was placed on a temporary administrative leave. On October 9, she received a formal notification of investigation, which explained that "allegations of inappropriate conduct" had been made against her and that she would be on investigative leave "for up to 30 work days." J.A. 466-67. On October 18, Dr. Etzel notified the EPA through her attorney that she believed her investigative leave was "improper under federal law." J.A. 1454.

During that same month, Dr. Etzel appeared on two television programs. First, on October 15, she was interviewed on *CBS This Morning*, during which she stated that "a national strategy to remove lead from children's environments . . . stalled;" she added that she had been told by an EPA official that any new regulation "wouldn't fly." J.A. 1608. She also said that "the government has absolutely no intention of taking any action toward seriously changing lead in children's environments." *Id.* In response to being asked "[w]hat does that mean for the kids?" she responded:

"[i]t basically means that our kids will continue to be poisoned." *Id.*

The next day, Dr. Etzel appeared on CNN. She told the CNN interviewer that the EPA had "got rid of" her because it "didn't take the protection of children's health seriously." J.A. 3262. Further, according to Dr. Etzel, the EPA leadership at the time did not "seem to adhere to the EPA mission, which has always been to protect both human health and the environment." *Id.*

In November 2018, Dr. Etzel received her fiscal year 2018 performance review, which rated her at "Level 1," an "Unsatisfactory" performance level. J.A. 1786. That overall rating resulted from a "Level 1" "Unsatisfactory" rating she was given for the critical element of "Leading People." *Id.* Dr. Etzel's intra-agency appeal of the rating decision was denied in March 2019.

On March 21, 2019, Dr. Etzel was informed by the EPA that the investigation into her alleged "inappropriate conduct" had concluded with a finding of lack of substantiation, meaning her investigative leave would end on March 25. She was also told that she would be removed from the SES and placed in a civil service GS-15 position effective April 28. Dr. Etzel's SES detail was later extended to May 25, during which time she remained part of the SES and was paid a salary at an SES rate.

On May 3, 2019, EPA informed Dr. Etzel that her SES pay would be reduced by 10% based on her "Unsatisfactory" performance rating for fiscal year 2018. On May 17, she received a written decision with more detailed explanations for her pay reduction. That written decision also advised Dr. Etzel that she had seven days to request reconsideration. On May 21, the EPA implemented the 10% pay reduction, decreasing her annual salary from $188,919 to $170,028. On May 24, Dr. Etzel requested reconsideration of the pay reduction, contending that the agency violated its regulations by implementing the pay

reduction before she had the opportunity to request reconsideration. The reconsideration request was eventually denied on November 20.

In the meantime, on May 26, 2019, Dr. Etzel's SES detail was terminated and she was appointed to a GS-15 position in the Office of Water.

B

Dr. Etzel filed a complaint with the Office of Special Counsel ("OSC"), alleging she had been retaliated against for making disclosures that were protected under the WPA. The OSC's investigation was terminated on July 8, 2019, at which point Dr. Etzel received a "right to sue" letter, allowing her to file an Individual Right of Action ("IRA") with the Board. Dr. Etzel did so on September 10, 2019 (the "Whistleblower Appeal"). Administrative Judge ("AJ") Weiss, who was originally assigned to the Whistleblower Appeal, determined that the Board had jurisdiction over it.

On August 3, 2020, in response to certain of Dr. Etzel's discovery requests, the EPA provided her with privilege logs. On September 18, AJ Weiss issued an order scheduling a prehearing conference for October 15. Two days later, Dr. Etzel filed a motion to continue the prehearing conference, indicating that she intended to file a motion to compel discovery, which prompted AJ Weiss to suspend the case until October 31, to allow the parties "additional time to resolve outstanding discovery issues." J.A. 607. During a status call on December 10, the EPA noted that Dr. Etzel had filed no motion to compel and contended that any such motion would now be untimely. AJ Weiss then entered an order in which he "hereby granted" Dr. Etzel until December 18 to file a motion to compel.[1] J.A. 610. On December

---

[1]     AJ Weiss' order states that "the *agency* is hereby granted until December 18, 2020 to file a motion to compel

18, Dr. Etzel filed such a motion. In its response, the EPA argued it was untimely but also addressed Dr. Etzel's discovery arguments on the merits.

On February 22, 2021, the Whistleblower Appeal was reassigned to AJ Alexander. On April 2, AJ Alexander entered an order denying Dr. Etzel's motion to compel as untimely, citing the Board's rule requiring that any such motion be filed within 10 days after the date of service of the response or objections, a period that had expired on August 13, 2020 (i.e., 10 days after Dr. Etzel received the EPA's privilege logs). AJ Alexander disagreed with Dr. Etzel's assertion that AJ Weiss had already ruled on the timeliness of her motion, explaining that AJ Weiss had "merely set a deadline by which [Dr. Etzel] could file a motion to compel; he made no ruling on whether it would be otherwise timely with respect to the agency's responses." J.A. 1310.

On May 13, 2021, following a prehearing conference in the Whistleblower Appeal, AJ Alexander docketed a separate appeal (the "Pay Reduction Appeal"), to permit Dr. Etzel to challenge the legality of her pay reduction under non-whistleblower statutes and regulations. In the Pay Reduction Appeal, AJ Alexander directed Dr. Etzel to present evidence and argument showing a nonfrivolous allegation of Board jurisdiction. Dr. Etzel responded by arguing that her pay reduction is reviewable because it was not "properly taken under SES regulations" and, therefore, was "subject to the provisions of 5 U.S.C. § 7512(4) and § 7513(d) applicable to non-SES employees, including the right to this MSPB appeal." J.A. 4354-55.

---

discovery in this matter." J.A. 610 (emphasis added). Read in context, the reference to "agency" is clearly a typographical error and means "Dr. Etzel."

On April 18, 2022, AJ Alexander issued initial decisions in both the Whistleblower Appeal and the Pay Reduction Appeal. In regards to the Whistleblower Appeal, AJ Alexander held that three of Dr. Etzel's disclosures were not protected: (1) her August 2018 expression of concern about the EPA's purported delay in responding to a congressional inquiry regarding the Strategy, (2) her October 2018 comments during the television appearances, and (3) her statement to the EPA that her placement on investigative leave was illegal. AJ Alexander found only one disclosure was protected by the WPA: Dr. Etzel's request for reconsideration of her pay reduction on the ground that the EPA violated 5 C.F.R. § 534.404(j)(3)(v) by implementing it before she had an opportunity to request its reconsideration. AJ Alexander nonetheless denied Dr. Etzel's request for corrective action based on his finding that this protected disclosure was not a contributing factor to any adverse personnel action.

With respect to the Pay Reduction Appeal, AJ Alexander found the Board lacked jurisdiction, based on his finding that Dr. Etzel had failed to raise a nonfrivolous allegation that her pay reduction was appealable. He found that Dr. Etzel was still a member of the SES on the May 21, 2019 effective date of her pay reduction, rendering that reduction (in SES pay) not appealable, pursuant to 5 C.F.R. § 534.404(j)(4). AJ Alexander added that any failure by the agency to follow regulations governing SES pay reduction would not confer jurisdiction on the Board. Accordingly, he dismissed the Pay Reduction Appeal.

Neither party filed an administrative petition for review. Thus, AJ Alexander's initial decisions became the final decisions of the Board. Dr. Etzel then timely filed petitions for our review of the Board's decisions. We have jurisdiction under 5 U.S.C. § 7703(b)(1) and 28 U.S.C. § 1295(a)(9).

## II

"Our review of Board decisions is limited by statute." *Holmes v. U.S. Postal Serv.*, 987 F.3d 1042, 1046 (Fed. Cir. 2021). We "review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McEntee v. Merit Sys. Prot. Bd.*, 404 F.3d 1320, 1325 (Fed. Cir. 2005) (internal quotation marks omitted). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

"The [B]oard's jurisdiction is not plenary, but is limited to those matters over which it has been granted jurisdiction by law, rule or regulation." *Johnston v. Merit Sys. Prot. Bd.*, 518 F.3d 905, 909 (Fed. Cir. 2008). Whether the Board has jurisdiction over an appeal is a question of law that we review de novo. *See Bennett v. Merit Sys. Prot. Bd.*, 635 F.3d 1215, 1218 (Fed. Cir. 2011). Factual findings underlying the Board's jurisdictional determination are reviewed for substantial evidence. *See Bolton v. Merit Sys. Prot. Bd.*, 154 F.3d 1313, 1316 (Fed. Cir. 1998).

## III

Dr. Etzel raises three issues in her petition for review. First, she argues that the Board erred in finding she did not make protected disclosures that were contributing factors to adverse personnel actions. Second, she contends that AJ Alexander erred in denying her motion to compel discovery as untimely. Third, she asserts that the Board erred in finding that it did not have jurisdiction to review

EPA's decision to reduce her pay.  We address each issue in turn.

## A

We begin with the protected disclosure issue.  A disclosure of information is protected under the WPA if the speaker "reasonably believes [it] evidences (i) any violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8)(A).  To determine whether a belief is reasonable, we apply "an objective test: whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee would reasonably conclude that the actions of the government evidence wrongdoing as defined by the [WPA]." *Young v. Merit Sys. Prot. Bd.*, 961 F.3d 1323, 1328 (Fed. Cir. 2020).  "The burden lies with the employee to show by a preponderance of the evidence that he or she made a protected disclosure . . . that was a contributing factor" to an adverse personnel action.  *Miller v. Dep't of Just.*, 842 F.3d 1252, 1257 (Fed. Cir. 2016) (internal quotation marks omitted).

Dr. Etzel's petition for review focuses on three disclosures: (1) the comments she made during her October 2018 television appearances; (2) her statement to EPA regarding her placement on investigative leave; and (3) her request for reconsideration of her pay reduction.  The Board determined that the first two of these disclosures were not protected under the WPA; it found that the third disclosure was protected disclosure but did not contribute to an adverse personnel action.[2]  We find no basis to set aside any of these Board determinations.

---

[2]    Dr. Etzel does not ask us to review the Board's finding that her expression of concerns about the EPA's delay

1

Dr. Etzel contends that the Board erred in finding the disclosures she made during her October 2018 appearances on CBS and CNN, about EPA's purported lack of intent to effectively address lead poisoning in children's environments, did not evidence a substantial and specific danger to public health and safety. We are not persuaded.

"[T]he inquiry into whether a disclosed danger is sufficiently substantial and specific to warrant protection under the WPA is guided by several factors, among these: (1) the likelihood of harm resulting from the danger; (2) when the alleged harm may occur; and (3) the nature of the harm, i.e, the potential consequences." *Chambers v. Dep't of Interior*, 602 F.3d 1370, 1376 (Fed. Cir. 2010) (internal quotation marks omitted) ("*Chambers II*"). We have explained that the first two factors "affect the specificity of the alleged danger, while the nature of the harm – the potential consequences – affects the substantiality of the danger." *Chambers v. Dep't of Interior*, 515 F.3d 1362, 1369 (Fed. Cir. 2008) ("*Chambers I*"). Applying these factors, we have found a danger to be sufficiently "substantial and specific," such that a disclosure about it warrants protection under the WPA, when the disclosure "concerned specific allegations or evidence either of actual past harm or of detailed circumstances giving rise to a likelihood of impending harm." *Chambers II*, 602 F.3d at 1376.

For example, in *Chambers II*, 602 F.3d at 1379, we held that the petitioner's disclosure that traffic accidents increased on the Baltimore-Washington Parkway, which often had two officers on patrol instead of the recommended four, evidenced a substantial and specific danger to public

_____

in responding to a congressional inquiry concerning the Strategy also did not constitute a protected disclosure under the WPA.

health or safety. We found that this disclosure "detail[ed] the specific consequence that ha[d] already resulted . . . [and] contain[ed] the specific details as to the cause of the increased danger;" thus, the alleged danger "was not vague or speculative." *Id.*; *see also Hessami v. Merit Sys. Prot. Bd.*, 979 F.3d 1362, 1369-71 (Fed. Cir. 2020) (finding petitioner made protected disclosure that particular named government physician prescribed HCV regimen for longer than recommended, without clinical justification); *Johnston*, 518 F.3d at 909-10 (finding petitioner made protected statement when she asserted that using inadequately trained personnel to review agency training exercises would increase danger of serious injury).

In contrast, statements revealing nothing more than a "negligible, remote, or ill-defined peril that does not involve any particular person, place, or thing" are not sufficiently specific to constitute protected disclosures. *Chambers II*, 602 F.3d at 1376 n.3; *see also Standley v. Merit Sys. Prot. Bd.*, 715 F. App'x 998, 1002-03 (Fed. Cir. 2017) (finding no protected disclosure when petitioner failed to show that harm to public safety from degradation in capability to detect nuclear blasts in space was "more than a possibility occurring at an undefined point in the future"); *Herman v. Dep't of Just.*, 193 F.3d 1375, 1378-80 (Fed. Cir. 1999) (finding no protected disclosure in petitioner's statements about absence of suicide watch room because he "failed to identify . . . there is a specific and substantial likelihood that there will be individuals in the future needing access to the suicide watch room").

The legislative history of the WPA also provides additional guidance. A Senate Report from the Committee on Governmental Affairs provided examples of disclosures that are and are not protected:

> Thus, for example, general criticism by an employee of the Environmental Protection Agency that the Agency is not doing enough

> to protect the environment would not be pro-
> tected under this subsection.  However, an al-
> legation by a Nuclear Regulatory Commission
> engineer that the cooling system of a nuclear
> reactor is inadequate would fall within the
> whistle blower protections.

S. Rep. No. 95-969, at 21 (1978).  From this Report (as well as from our cases), it is clear that mere policy disagreements and generalized critiques of agency priorities are not protected or actionable under the WPA.

With these guideposts in mind, we agree with the Board that Dr. Etzel failed to show "her expressions of skepticism regarding EPA's commitment and strategy to address [the] perils [of lead poisoning in children] evidenced a disclosure of a substantial and specific danger to public health and safety."[3]  J.A. 29-30.  While there is no

---

[3]   The appropriate standard of our review of the Board's determination that Dr. Etzel's disclosures do not satisfy the "substantial and specific" requirement is unclear.  In previous nonprecedential opinions, we have applied substantial evidence review to this inquiry.  *See Finizie v. Dep't of Veterans Affs.*, No. 2021-1493, 2021 WL 5099988, at *2 (Fed. Cir. Nov. 3, 2021) ("[S]ubstantial evidence supports the Board's conclusion that none of the three disclosures asserted by Petitioners were protected disclosures."); *Groseclose v. Dep't of Navy*, 459 F. App'x 918, 922 (Fed. Cir. 2012) (finding Board's conclusion that emails alleging disclosure of danger to public health and safety were not protected disclosures was supported by substantial evidence).  EPA asks that we do the same here.  *See* Appellee Br. at 35.  Dr. Etzel, in her briefs, suggests we must apply de novo review to what she characterizes as a question of law, *see* Petitioner's Br. at 18-19, although at oral argument she told us we are reviewing "a mixed

dispute as to the substantiality of the harm to children's health in general from lead poisoning, we agree with the Board that Dr. Etzel's concern about the EPA's policy priorities represents general criticism of agency policy and does not meet the specificity requirement to become a protected disclosure under the WPA.

Dr. Etzel disclosed that "the government has absolutely no intention of taking any action toward seriously changing lead in children's environments." J.A. 1608. She also stated that "a national strategy to remove lead from children's environments . . . stalled." *Id.* While who is being harmed (children) and by what (the government's failure to reduce lead in the environment) is specified, the record is devoid of any indication that Dr. Etzel made a statement about a specific action that should be taken to deal with the danger of children being exposed to lead that either was or could have been included in the Strategy or in new regulations.

While "protect children from the known harms of lead poisoning" is more specific than "protect the environment," which is mentioned in the legislative history as not protected, it is more general than the identification of a particular nuclear reactor plagued by a deficient cooling system, a disclosure exemplified in the legislative history as protected. Even without delineating with precision the full contours of the border between "too general" and "sufficiently specific," we conclude that Dr. Etzel's broad,

---

question of fact and law as to whether her disclosures were substantial and specific." Oral Arg. at 12:54-13:05, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22 -2050_02072024.mp3. Because we would affirm under any standard of review, including the non-deferential standard of de novo review, we need not resolve the parties' dispute as to which standard is correct.

undifferentiated disclosure falls on the overly-general side of that line.

The Board's analysis of Dr. Etzel's statements is consistent with the *Chambers II* factors and our other prior decisions. With respect to the first factor – "the likelihood of harm resulting from the danger" – Dr. Etzel asserts that "the EPA's inactions exacerbated the ongoing peril" of lead poisoning in children. Petitioner's Br. at 25. However, the Board reasonably found that Dr. Etzel's televised comments "made no specific allegations . . . about EPA's policies or actions, nor did her disclosures reveal a specific, impending harm resulting because of any delay" in the issuance of the Strategy. J.A. 30. Her general disclosures that the Strategy "stalled" and new regulations "wouldn't fly" do not speak to any particularized threats to children's health stemming from the failure to expeditiously implement her preferred actions. *See Auston v. Merit Sys. Prot. Bd.*, 371 F. App'x 96, 101-02 (Fed. Cir. 2010) (finding no protected disclosure when petitioner's complaint about understaffing was "vague and speculative," lacking "specific allegations that the alleged understaffing . . . was resulting in unhygienic equipment").

Turning to the second factor – "when the alleged harm may occur" – Dr. Etzel asserts that the harm "is ongoing now." Petitioner's Br. at 25. But the existence of an already-underway and continuing danger of children's exposure to lead does not necessarily indicate any consequence (e.g., exacerbation or failure of mitigation) will flow from EPA's alleged inaction, which is the subject of Dr. Etzel's disclosures. *See Chambers II*, 602 F.3d at 1379 (finding "*increased* traffic accidents" caused by reduction of police officers "had already occurred") (emphasis added); *Hessami*, 979 F.3d at 1369 (discussing "*increased* exposure to adverse drug reactions and side effects" due to overprescribing) (emphasis added); *Johnston*, 518 F.3d at 910 (explaining that "inadequately trained personnel to review agency training exercises would *increase* the danger of

serious injury") (emphasis added).  Here, because Dr. Etzel raised only vague concerns, without disclosing any measure she had proposed be included in the Strategy or any other specific flaw in it, she has not shown anything "more than a possibility" of a particular harm "occurring at an undefined point in the future."  J.A. 30.

The third factor – "the nature of the harm" – only goes to the substantiality of the danger, not the specificity of a disclosure.  *See Chambers I*, 515 F.3d at 1369.  There is no dispute that harm to children from exposure to lead is substantial.  The unquestioned substantiality of the harm, however, does nothing to make Dr. Etzel's generalized disclosures any more specific.  *See Standley*, 715 F. App'x at 1003 (finding petitioner's disclosures about degraded capabilities of detecting nuclear blasts in space, an undisputedly crucial matter, nonetheless related to mere "possibility" of harm "at an undefined point in the future").

To be sure, as Dr. Etzel points out, "'[t]he fact that a particular health or safety statement involves a policy decision or disagreement does not deprive it of protection under the WPA.'"  Petitioner's Br. at 24 (quoting *Chambers II*, 602 F.3d at 1376).  To be protected, however, her policy-related statements must be about a substantial and specific danger to public health or safety rather than generalized concerns of agency inaction.  For the reasons we have explained, Dr. Etzel's broad allegations about EPA's lack of commitment to addressing children's lead exposure are too general to meet this standard.

Dr. Etzel further argues that the Board, in assessing the reasonableness of the beliefs she expressed in the televised interviews, failed to account for her expertise.  Even assuming Dr. Etzel's beliefs about EPA's purported misconduct were, given her expertise, reasonable, her statements still lacked the requisite specificity to warrant protection under the WPA.

In sum, Dr. Etzel's disclosures identified a broad, generalized, known danger to children (lead exposure) but failed to identify a specific policy failure or a specific danger likely to have an immediate impact. Thus, we agree with the Board that Dr. Etzel's statements during her October 2018 television appearances "constituted general criticism" of the EPA's "priorities and commitment to lead abatement rather than a protected disclosure of a substantial and specific danger to public health." J.A. 30.

2

Dr. Etzel next contends that her October 2018 statement to the EPA that her investigative leave was illegal ("October Disclosure") is a protected disclosure under the WPA. Dr. Etzel's primary argument is that the Board was wrong to conclude she could not, on October 18, 2018, have had a reasonable belief that a law had been violated because, as of that date, she had not yet been on investigative leave for more than 30 work days – and administrative leave of up to 30 work days is expressly permitted under the Administrative Leave Act, 5 U.S.C. § 6329b (2016). According to Dr. Etzel, she "*did* make disclosures about the illegality of her investigative leave well after 30 days," including in her November 28, 2018 complaint to the OSC ("November Disclosure"), and on December 19 and 21, 2018 ("December Disclosure"). Petitioner's Br. at 31-32.

Dr. Etzel's contentions are unavailing. The inquiry as to the reasonableness of her beliefs turns on the date she made the disclosure, not the date she filed her complaint with OSC or at some still later date. *See Edenfield v. Dep't of Veterans Affs.*, 54 F.4th 1357, 1361 (Fed. Cir. 2022) (assessing reasonableness of speakers' beliefs "*at the time they made the disclosure*"). Dr. Etzel made the disclosure for which she seeks protection on October 18, 2018, which was less than 30 work days after she had been placed on investigative leave, and therefore at a time when she could not have reasonably believed the agency acted unlawfully in

that respect. Her subsequent November Disclosure and December Disclosure are not merely "additional information" or "a more detailed account of" Dr. Etzel's October Disclosure. *See Briley v. Nat'l Archives & Recs. Admin.*, 236 F.3d 1373, 1378 (Fed. Cir. 2001). Instead, those latter statements would be the basis for (if anything) a distinct claim. However, because Dr. Etzel did not exhaust her administrative remedies with respect to the November and December Disclosures, these disclosures cannot provide a basis on which we could find a reversible error in the Board's decision. *See McCarthy v. Merit Sys. Prot. Bd.*, 809 F.3d 1365, 1374 (Fed. Cir. 2016) (finding that distinct disclosures require exhaustion as to each).

3

Dr. Etzel next contends that the record lacks substantial evidence for the Board's determination that her request for reconsideration of her pay reduction was not a contributing factor to any adverse personnel action she allegedly suffered. We disagree.

Substantial evidence supports the Board's finding that Dr. Etzel's purported lack of substantive work assignments at the Office of Water was not an adverse personnel action. In reaching this conclusion, AJ Alexander witnessed and evaluated the testimony of Ms. Deborah Nagle, Dr. Etzel's supervisor at the Office of Water, who explained that she assigned Dr. Etzel "meaningful and plentiful work." J.A. 35. He also considered documentary evidence of Dr. Etzel's duties, work assignments, and work product. Based on the evidence, AJ Alexander found that Ms. Nagle "testified in a direct and straightforward manner, and her testimony was specific, detailed, and consistent with other record evidence." *Id.* Even assuming substantial evidence could have supported a contrary conclusion, AJ Alexander's decision to credit Ms. Nagle's testimony over Dr. Etzel's and his evaluation of the documentary record make his determination a reasonable one. *See Chambers I*, 515 F.3d at 1370

(finding that Board's "credibility determinations are virtually unreviewable at this level") (internal quotation marks omitted).

Because Dr. Etzel failed to prove she suffered from an adverse personnel action, it necessarily follows that she failed to prove that any protected disclosure she may have made (if any) was a contributing factor to an adverse personnel action.

## B

We turn next to Dr. Etzel's contention that AJ Alexander abused his discretion by denying her motion to compel discovery as untimely. *See generally Chambers I*, 515 F.3d at 1371 ("We leave discovery and evidentiary issues to the sound discretion of the board and its officials, and will not overturn the board on such matters unless an abuse of discretion is clear and is harmful.") (internal quotation marks omitted). Pursuant to Board regulations, "[a]ny motion for an order to compel or issue a subpoena must be filed with the judge within 10 days of the date of service of objections." 5 C.F.R. § 1201.73(d)(3). Dr. Etzel acknowledges that her December 18, 2020 motion was filed far more than 10 days after she received the privilege logs from EPA on August 3, 2020. She insists, however, that AJ Weiss extended her filing deadline in his December 10, 2020 order, "grant[ing] [Dr. Etzel] until December 18, 2020 to file a motion to compel discovery in this matter." J.A. 610.

Dr. Etzel's reading of AJ Weiss' order is not unreasonable, but neither is AJ Alexander's alternative reading. AJ Alexander read the order as "merely set[ting] a deadline by which [Dr. Etzel] could file a motion to compel" and as making "no ruling on whether it would be otherwise timely with respect to the agency's responses," a determination AJ Weiss would have presumably made when, and only when, he received such a motion. J.A. 1310. The record reveals no express request by Dr. Etzel for an extension of the § 1201.73 deadline, nor any explicit grant of any extension.

There is, in short, no clear error in AJ Alexander's interpretation of AJ Weiss' prior order and no abuse of discretion in denying the motion to compel.

C

Finally, we address Dr. Etzel's petition for review of the Board's decision in the Pay Reduction Appeal. In this regard, the Board concluded that Dr. Etzel did not raise a nonfrivolous allegation of Board jurisdiction, reasoning (i) Dr. Etzel was a member of the SES when her pay was reduced and (ii) pay reductions for SES members are not reviewable by the Board. *See* 5 C.F.R. §§ 534.404(j)(1), (4). Dr. Etzel's challenges to this analysis lack merit.

Dr. Etzel first contends that the extension of her SES detail for the purpose of reducing her pay was "a sham," and because the EPA "could not legally act to reduce her pay under SES regulations under the circumstances,"[4] the pay reduction is reviewable under 5 U.S.C. §§ 7512(4) and 7513(d). Petitioner's Br. at 42-43. We disagree. As Dr. Etzel recognizes, members of the SES do not come within the definition of "employee" as set forth in 5 U.S.C. § 7511(a)(1), which renders such individuals ineligible to appeal pay reductions under 5 U.S.C. §§ 7512(4) and 7513(d). Pay reductions for SES members are also made unreviewable by 5 C.F.R. § 534.404(j)(4), which provides that "[r]eductions in pay under paragraph (j) of this section are not appealable under 5 U.S.C. 7543." It follows that because Dr. Etzel remained a member of the SES when her pay reduction was implemented on May 21, 2019, the

---

[4] Under 5 C.F.R. § 359.705(a)(3), "[a]n appointee placed . . . in a position outside the SES (in the same or different agency) is entitled to receive basic pay at the highest of . . . [t]he rate of basic pay in effect for the appointee immediately before removal from the SES."

Board cannot exercise jurisdiction over her appeal under 5 U.S.C. §§ 7512(4), 7513(d), or 7543(d).

Dr. Etzel cites no authority for her contention that she can meet her burden to establish Board jurisdiction by alleging (or even by proving) that an agency's action to extend an SES detail was a "sham," undertaken solely (and improperly) to reduce her pay without review. Dr. Etzel suggests that the EPA could have either reduced her pay or demoted her out of SES but could not do both. Yet, again, she cites no authority for this proposition, so we fail to see how it helps her show the Board had jurisdiction over her Pay Reduction Appeal.

Dr. Etzel next argues that the Board had jurisdiction under 5 U.S.C. §§ 7512(4) and 7513(d) because she had been removed from the SES by the time her pay reduction was, in her words, "finally decided," when her request for reconsideration under 5 C.F.R. § 534.404(j)(3)(v) was denied in November 2019. Petitioner's Br. at 45-46. But the pay reduction actually occurred back on May 21, 2019, a fact Dr. Etzel herself acknowledged. *See, e.g.*, Petitioner's Br. at 45-46 ("EPA improperly put the pay reduction into effect on May 21, 2019."); *id.* at 46 ("EPA effectuated the pay reduction on May 21, 2019."). Dr. Etzel cites no authority that the pertinent date is anything other than when the pay reduction is effectuated.

Dr. Etzel further contends that EPA violated 5 C.F.R. § 534.404(j)(3)(v) by implementing her pay reduction before the deadline for her to request reconsideration had passed. Dr. Etzel points to no authority for the proposition that the Board's jurisdiction is expanded where an agency acts too quickly in implementing an unreviewable pay reduction. We agree with the Board that this alleged violation does not create Board jurisdiction over the Pay Reduction Appeal.

For all these reasons, the Board did not err in concluding that it lacked jurisdiction to review Dr. Etzel's Pay Reduction Appeal.

IV

We have considered Dr. Etzel's remaining arguments and find them unpersuasive.  Thus, we affirm the Board.

**AFFIRMED**