# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| VAUGHN HOEFLIN STANDLEY, <br> Appellant, | DOCKET NUMBER <br> DC-1221-16-0168-W-1 |
| v. | |
| DEPARTMENT OF ENERGY, <br> Agency. | DATE: January 3, 2017 |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Richard R. Renner, Washington, D.C., for the appellant.

Saul Ramos, Albuquerque, New Mexico, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1 The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order, we AFFIRM the initial decision.[2]

## BACKGROUND

¶2      The appellant is a General Engineer, NN-4, with the agency's National Nuclear Security Administration. Initial Appeal File (IAF), Tab 1. In January 2014, he told his supervisor, the Director of the Office of Defense Nuclear Nonproliferation Research and Development (Director), and the Deputy Director of his belief that the agency needed to field the Space Atmospheric Burst Reporting System (SABRS3). *Id.* at 6. SABRS3 is a satellite payload designed to detect a nuclear detonation in space. *Id.* at 4. On July 31, 2014, the appellant told the Director that he had approved plans developed by the Los Alamos National Laboratory to begin integrating SABRS3 on a U.S. Air Force (Air Force) Space Test Program satellite. *Id.* at 6. On August 8, 2014, the Director told the appellant that he had decided to stop funding SABRS3. *Id.* at 7.

¶3      On September 9, 2014, the agency advertised the position of Director for the Office of Nuclear Detonation Detection (NDD). *Id.* The appellant asserts that, on September 14, 2014, the Deputy Director announced that current employees in the appellant's department would not be considered for an

---

[2] We have modified the initial decision to correct the administrative judge's findings regarding exhaustion.

upcoming job posting and, if they desired an explanation of the policy, they should speak with him privately. *Id.* The appellant submitted his application for the position and was referred to the hiring manager. *Id.* The appellant was not selected and the vacancy announcement was canceled on or about October 27, 2014. *Id.* The appellant grieved his nonselection for the position on November 10, 2014. *Id.* at 7-8. The agency denied the grievance on January 7, 2015. *Id.*

¶4 On February 5, 2015, the appellant filed a complaint with the Office of Special Counsel (OSC), alleging that he was not allowed to compete for two job openings, including the NDD Office Director position. IAF, Tab 5 at 30, 39. In addition, he complained that the agency allowed his grievance to be closed without requiring either the Director or the Deputy Director to accept or dispute facts in the grievance alleging a prohibited personnel practice. *Id.* The appellant alleged that this was contrary to the agency's grievance process. *Id.* at 30. On September 28, 2015, OSC closed the appellant's file, and notified him of his right to request corrective action from the Board. *Id.* at 39-40. The appellant filed a timely appeal. IAF, Tab 1.

¶5 In an initial decision, the administrative judge found that the appellant exhausted his claims before OSC concerning personnel actions occurring on or before February 5, 2015, the date he filed his OSC complaint. IAF, Tab 9, Initial Decision (ID) at 3-4. That period of time includes the agency's cancelling of the vacancy for the NDD Office Director position in October 2014. ID at 4. The administrative judge found no indication that the appellant had exhausted his remedies for, or that OSC had conducted an investigation into, any alleged personnel actions that occurred after February 5, 2015. *Id.* Regarding his nonselection for NDD Office Director, the administrative judge found that the appellant failed to nonfrivolously allege that he made a protected disclosure. ID at 4-7. Specifically, the administrative judge found that the appellant's opinions on SABRS3 that he disclosed to management pertained to a policy dispute, rather

than to one of the forms of protected disclosure set forth under 5 U.S.C. § 2302(b)(8). ID at 5. The administrative judge also rejected the appellant's retaliation claim under 5 U.S.C. § 2302(b)(9)(D) because he failed to produce evidence that the agency retaliated against him for refusing to obey an order that would require him to violate the National Defense Authorization Act (NDAA) of 2008, Pub. L. No. 110-181, § 1065, 122 Stat. 3 (2008). ID at 5; IAF, Tab 5 at 8−9. Finally, the administrative judge rejected the appellant's claim that he had disclosed a substantial and specific danger to public health and safety. ID at 6. The administrative judge dismissed the appeal for lack of Board jurisdiction. ID at 6-7. The appellant filed a petition for review. Petition for Review (PFR) File, Tab 1.

## ANALYSIS

¶6     To establish the Board's jurisdiction over an appeal brought pursuant to the Whistleblower Protection Enhancement Act (WPEA), an appellant must exhaust his administrative remedies before OSC and make nonfrivolous allegations[3] of the following:   (1) he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8), or engaged in other protected activity as specified in 5 U.S.C. § 2302(b)(9); and (2) the disclosure or activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a)(2)(A).   5 U.S.C. §§ 1214(a)(3), 1221; *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001). To satisfy the exhaustion requirement of 5 U.S.C. § 1214(a)(3) in an IRA appeal, an appellant must inform OSC of the precise ground of his charge of whistleblowing, giving OSC a sufficient basis to pursue an investigation that

---

[3] Nonfrivolous jurisdictional allegations supported by affidavits or other evidence confer Board jurisdiction. *Dick v. Department of Veterans Affairs*, 290 F.3d 1356, 1361 (Fed. Cir. 2002), *overruled on other grounds*, *Garcia v. Department of Homeland Security*, 437 F.3d 1322 (Fed. Cir. 2006) (en banc); *Woodworth v. Department of the Navy*, 105 M.S.P.R. 456, ¶ 14 (2007), *aff'd*, 329 F. App'x 281 (Fed. Cir. 2009).

might lead to corrective action. *Ward v. Merit Systems Protection Board*, 981 F.2d 521, 526 (Fed. Cir. 1992).

¶7        The appellant argues that the administrative judge erred in finding that OSC's investigation did not cover personnel actions that occurred after February 5, 2015. PFR File, Tab 1 at 10-12; ID at 4. The appellant explains that OSC's close-out letter suggests that it investigated matters up to September 28, 2015. *Id.* at 10. He further explains that, although the administrative judge stated that his nonselection took place on October 27, 2014, when the vacancy announcement was canceled, ID at 2, a "second nonselection" took place in late May 2015, when he learned that another employee "was given an unauthorized preference or advantage and pre-selected for the subsequent re‑posted NDD Director position." PFR File, Tab 1 at 11. The appellant argues that OSC investigated the May 2015 nonselection, and that the agency's actions after February 5, 2015, constitute further proof of retaliation. *Id.* at 11-12.

¶8        While there is no other proof in the record that the appellant raised post‑February 5, 2015 matters with OSC, *see, e.g.*, IAF, Tab 5 at 30-38, OSC's September 28, 2015 close-out letter directly addresses his allegations regarding the agency's ultimate selection and his own nonselection for the NDD Office Director position, IAF, Tab 1 at 23-24, Tab 5 at 39-40. Clearly, these matters were exhausted. We thus correct the initial decision to the extent that the administrative judge drew an erroneous conclusion regarding the February 5, 2015 cut-off date.

¶9        Nevertheless, these matters do not change the outcome of the appeal, as the appellant failed to make a protected disclosure under 5 U.S.C. § 2302(b)(8). A protected disclosure is defined as:

> a formal or informal communication or transmission, but does not include a communication concerning policy decisions that lawfully exercise discretionary authority unless the employee or applicant providing the disclosure reasonably believes that the disclosure evidences—

(i) any violation of any law, rule, or regulation; or

(ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

5 U.S.C. § 2302(a)(2)(D); *see* 5 U.S.C. § 2302(b)(8).  A whistleblower need not prove that the matter he disclosed actually established any of the conditions described in section 2302(b)(8).  Instead, he must make a nonfrivolous allegation that the matter he disclosed was one that a reasonable person in his position would believe evidenced any of these conditions.  *Applewhite v. Equal Employment Opportunity Commission*, 94 M.S.P.R. 300, ¶ 12 (2003).

¶10        The test to determine if the appellant had a reasonable belief that his disclosure evidenced any of the types of wrongdoing identified in 5 U.S.C. § 2302(b)(8) is whether a "disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee [could] reasonably conclude that the actions of the government evidence[d]" such wrongdoing.  *Id.* (citing *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999)).  Determining whether an employee had a reasonable belief that a law, rule, or regulation was violated turns on the facts of a particular case.  *Drake v. Agency for International Development*, 543 F.3d 1377, 1381 (Fed. Cir. 2008).  The Board, however, requires an appellant to provide more than vague and conclusory allegations of wrongdoing.  *McCorcle v. Department of Agriculture*, 98 M.S.P.R. 363, ¶ 21 (2005).

¶11        Here, the appellant argued that management's decision to discontinue funding of SABRS3 was a violation of law and created a substantial and specific danger to public health or safety.  IAF, Tab 1 at 4-5, 8, 11-12, Tab 5 at 8-9, 12–13.  The appellant alleged that he disclosed the need to continue funding SABRS3 because the program was necessary to comply with section 1065 of the NDAA.  IAF, Tab 1 at 4, 6, Tab 5 at 9.  He reasserts this position on review.  PFR File, Tab 1 at 6-9.  Section 1065 of the NDAA states that the Secretary of

Defense shall maintain the "capability for space-based nuclear detection at a level that meets or exceeds the level of capability as of" January 28, 2008. Although the appellant has asserted that he reasonably believed that the agency violated section 1065 of NDAA in deciding to cease implementing SABRS3, he has not provided any evidence to support his assertion. Under section 1065, the responsibility to maintain the "capability for space-based nuclear detection" falls to the Secretary of Defense. The appellant and his colleagues at the Department of Energy do not bear that responsibility, even if they have been tasked with and funded for supporting such an activity. PFR File, Tab 1 at 7, 23-24. In addition, as the administrative judge correctly found, the appellant himself conceded that policy makers in the Air Force, the United States Strategic Command (STRATCOM), and the Department of State determined whether SABRS3 was needed, and many, including senior members of STRATCOM and the Air Force, opposed the program. ID at 6; IAF, Tab 1, Further, section 1065 does not limit the Secretary of Defense to using any particular device or system to maintain space-based nuclear detection capability. A reasonable and disinterested person with knowledge of the facts known to and readily ascertainable by the appellant would not conclude that he was reporting a violation of law.

¶12        Although a disclosure of a substantial and specific danger to public health or safety is protected under 5 U.S.C. § 2302(b)(8), revealing a negligible, remote, or ill-defined peril that does not involve any particular person, place, or thing is not protected. *See Johnston v. Merit Systems Protection Board*, 518 F.3d 905, 909-10 (Fed. Cir. 2008). In *Chambers v. Department of the Interior*, 515 F.3d 1362 (Fed. Cir. 2008), the U.S. Court of Appeals for the Federal Circuit identified a number of factors that the Board might consider in determining whether disclosing a danger to public health or safety is sufficiently substantial and specific to warrant protection under 5 U.S.C. § 2302(b)(8):

> One such factor is the *likelihood of harm resulting from the danger*. If the disclosed danger could only result in harm under speculative or

> improbable conditions, the disclosure should not enjoy protection. Another important factor is *when the alleged harm may occur*. A harm likely to occur in the immediate or near future should identify a protected disclosure much more than a harm likely to manifest only in the distant future. Both of these factors affect the specificity of the alleged danger, while the nature of the harm—*the potential consequences*—affects the substantiality of the danger.[4]

*Id.* at 1369 (emphasis added); *see also Chambers v. Department of the Interior*, 602 F.3d 1370, 1376 (Fed. Cir. 2010); *see, e.g.*, *Miller v. Department of Homeland Security*, 111 M.S.P.R. 312, ¶ 19 (2009). We do not question that a delayed response to a nuclear detonation in space would imperil public health and safety, but the appellant has not shown that such an occurrence is more than a possibility occurring at an undefined point in the future.[5] *Cf., e.g.*, *Johnston*, 518 F.3d at 910 (finding that the appellant disclosed a specific and substantial danger "not only because training exercises take place under extreme weather conditions and routinely involve the use of live fire and explosives, but also because a series of accidents had occurred during such exercises in the past").

¶13    The record shows that decisions pertaining to continuing SABRS3 followed considerable interagency consultation and debate in the context of broader programmatic discussions. IAF, Tab 1 at 7-13, Tab 5 at 12-13. The administrative judge thus found that the narrow exception for policy disputes

---

[4] The appellant argues that *Chambers* is "outdated" and was "legislatively rejected" by Congress with the passage of the WPEA, which "reaffirmed its intent to protect *all* disclosures that a whistleblower reasonably believes evidence" any of the conditions set forth in 5 U.S.C. § 2302(b)(8). PFR File, Tab 1 at 18 (italics in original). Although the WPEA broadened the types of disclosures that might be protected under the statute, the *Chambers* factors go to the *reasonableness of an employee's belief* that the matter he is disclosing represents a condition described by the statute. Moreover, our reviewing court still cites the *Chambers* factors. *See, e.g.*, *Yeh v. Merit Systems Protection Board*, 527 F. App'x 896, 901 (2013).

[5] The appellant noted that he cannot disclose some information in support of his argument because it is classified for reasons of national security. IAF, Tab 5 at 9. Such information, however, would have been considered by the policymakers who debated whether or not to continue funding the program, and ultimately rejected it.

foreclosed the appellant from having made a protected disclosure. ID at 5. The Board has found that, when the alleged whistleblower is expressing disagreement with fairly debatable policy decisions, his disclosures do not fall within those defined as protected under 5 U.S.C. § 2302(b)(8). *Cf. O'Donnell v. Department of Agriculture*, 120 M.S.P.R. 94, ¶ 14 (2013) (holding that the appellant's alleged protected disclosure was "exactly the type of fairly debatable policy dispute that does not constitute gross mismanagement"), *aff'd*, 561 F. App'x 926 (Fed. Cir. 2014). The appellant asserts that the administrative judge mischaracterized the nature of the debates over discontinuing funding for SABRS3. PFR File, Tab 1 at 6-9, 12-15. He further asserts that the fact that discontinuing SABRS3 was debated on various occasions does not mean that the decision not to fund the program was debatable because its cancellation would violate section 1065 of the NDAA. *Id.* at 15. The appellant's argument is unavailing because, as explained above, he failed to nonfrivolously allege that the agency violated section 1065.

¶14      The appellant argues that the administrative judge improperly cited *O'Donnell* because that case pertains to gross mismanagement and not to a substantial and specific danger to public health or safety. *Id.* at 16-17. The appellant also argues that the legislative history of the WPEA criticized a case upon which *O'Donnell* relies, *White v. Department of the Air Force*, 391 F.3d 1377, 1382 (Fed. Cir. 2004). PFR File, Tab 1 at 16 (citing S. Rep. No. 112-155, at 10 n.37 (2012)). In *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 9 (2015), however, the Board clarified the issues raised in the legislative history and concluded that "if an employee has a reasonable belief that the disclosed information evidences the kinds of misconduct listed in section 2302(b)(8), rather than a policy disagreement, [the disclosure] is protected." Here, the appellant has failed to nonfrivolously allege that his own belief that canceling the SABRS3 program posed a substantial and specific danger to public health or safety was a reasonable one.

¶15      In the proceeding below, the appellant also asserted that the agency retaliated against him for refusing to obey an order that would require him to violate the NDAA. IAF, Tab 1 at 4, Tab 5 at 9; *see* 5 U.S.C. § 2302(b)(9)(D) (an agency cannot "take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment . . . for refusing to obey an order that would require the individual to violate a law"). The administrative judge found that this claim failed because the appellant did not produce any evidence of such retaliation. ID at 5. On review, the appellant asserts that the initial decision is erroneous in this respect and cites comments that the Director made regarding the decision to cancel or continue the SABRS3 program. PFR File, Tab 1 at 27-28. These comments, however, do not suggest any retaliatory motive. The appellant has not substantiated his allegation that the agency retaliated against him for his opposing the discontinuation of the SABRS3 program.

¶16      The appellant additionally argues on review that the administrative judge held him to an erroneous jurisdictional standard when he stated that "[n]onfrivolous jurisdictional allegations supported by affidavits or other evidence confer Board jurisdiction." *Id.* at 28; ID at 4-5. The appellant asserts that the proper and more recent standard requires only that he "plead allegations of fact that, if proven, could show that he made a protected disclosure and that the disclosure was a contributing factor in a personnel action" and that "[a]ny doubt or ambiguity as to whether [he] made nonfrivolous jurisdictional allegations should be resolved in favor of finding jurisdiction." PFR File, Tab 1 at 28. He further asserts that the veracity of any allegations he made was immaterial at this stage of the proceeding, and thus any submission of proof would be unnecessary. *Id.* at 29. The standard to which the appellant objects, however, is not the Board's jurisdictional standard, but rather, the Board's definition of a nonfrivolous allegation, which has been codified in the Board's regulations: "An allegation generally will be considered nonfrivolous when, under oath or penalty

of perjury, an individual makes an allegation that: (1) Is more than conclusory; (2) Is plausible on its face; and (3) Is material to the legal issues in the appeal." 5 C.F.R. § 1201.4(s). The administrative judge did not err.

¶17 Finally, the appellant asserts that he has new and material evidence, namely information he received in 2013 from a colleague who overheard the Director telling the Deputy Director that he intended "to find ways not to fund [SABRS3]." PFR File, Tab 1 at 29-31. When he filed his OSC complaint, he asserts, he did not include this information because the colleague told him at that time that she could not remember certain details about the conversation she was recounting. *Id.* at 30. She later remembered those details and notified the appellant. *Id.* The appellant argues that the information was thus unavailable to him when he filed his OSC complaint, and he asks the Board to consider it now. *Id.* at 30-31. Even if the appellant *had* submitted this information to OSC for consideration with his complaint, however, he has offered no evidence in support of this newly raised allegation. *See* 5 C.F.R. § 1201.4(s). Therefore, the Board will not consider it.

¶18 Accordingly, we affirm the initial decision as modified.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.  The court of appeals must receive your petition for review within 60 days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both.  Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.  Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                 Jennifer Everling
                                 Acting Clerk of the Board

Washington, D.C.