NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CAMERON L. HOLLAND,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

**DEPARTMENT OF JUSTICE,**
*Intervenor*

---

2019-1388

---

Petition for review of the Merit Systems Protection Board in No. DE-0752-18-0332-I-1.

---

Decided: January 6, 2020

---

LOUIS FRANCIS ROBBIO, Law Office of Louis F. Robbio, North Port, FL, argued for petitioner.

JEFFREY GAUGER, Office of General Counsel, United States Merit Systems Protection Board, Washington, DC, argued for respondent. Also represented by KATHERINE MICHELLE SMITH, TRISTAN LEAVITT.

REBECCA SARAH KRUSER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for intervenor. Also represented by JOSEPH H. HUNT, CLAUDIA BURKE, ROBERT EDWARD KIRSCHMAN, JR.

————————————

Before MOORE, REYNA, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Cameron Holland worked as a Special Agent in the Drug Enforcement Administration (DEA), a part of the United States Department of Justice, under an excepted-service appointment. Just over a year into his employment, the DEA terminated Mr. Holland from his position, without having given him notice of the proposed basis of termination or a pre-decision opportunity to provide the deciding official a response. Mr. Holland appealed to the Merit Systems Protection Board, seeking review of the termination. But the Board dismissed the appeal, concluding that the request for review is not within any grant of jurisdiction to the Board. We agree that the Board lacks jurisdiction, and we therefore affirm, leaving the termination unreviewed.

I

Before he began working for the DEA in 2017, Mr. Holland served as a local police officer. Between 2009 and 2015, his police department employer issued him three letters of corrective action and three letters of disciplinary action. In May 2016, when Mr. Holland applied to be a special agent with the DEA, he completed an electronic questionnaire as part of the application. The questionnaire asked whether, in the last seven years, he had "received a written warning, been officially reprimanded, suspended, or disciplined for misconduct in the workplace, such as a violation of security policy." J.A. 159. Mr. Holland responded "[n]o." *Id.*

On February 9, 2017, the DEA sent Mr. Holland a letter indicating that he had qualified for an interim clearance and offering him a position as a special agent. The letter indicated that Mr. Holland could begin working before the Office of Personnel Management (OPM) completed his background investigation but that he would be removed from the position if "[o]nce the background investigation ha[d] been received and reviewed . . . any previously unknown or discrepant information [wa]s uncovered that would have had a negative impact on [his] selection." J.A. 143. Mr. Holland accepted the offer.

On May 14, 2017, Mr. Holland began work as a Special Agent in the DEA "serving under an excepted service appointment" that "may be converted to a career appointment in not less than three years and not more than four years." J.A. 137. Mr. Holland's appointment was also subject to a two-year probationary period.

OPM completed Mr. Holland's background investigation on January 3, 2018. While performing the investigation, the OPM investigator learned of the corrective and disciplinary actions taken against Mr. Holland while he was employed as a police officer. In the report based on the "Enhanced Subject Interview," the investigator wrote that Mr. Holland "did not list all of his employment disciplinary actions because he asked a friend if he should list all of the contact cards/disciplinary action[s] and [the] friend told him he was not required to list [them]." J.A. 117. The investigator wrote that Mr. Holland "was not trying to hide" the disciplinary actions, which were "common knowledge." *Id.*

On May 31, 2018, the DEA terminated Mr. Holland from his position. There had been no notice of proposed removal or an opportunity for Mr. Holland to submit to the deciding official a response to such a proposal. Citing as authority 5 U.S.C. chapter 23 (§§ 2301–2306), the termination letter states that the decision was based on Mr.

Holland's "failure to provide complete and truthful information in [his] background investigation." J.A. 107. The DEA also completed OPM's Standard Forms 50 and 52, which show that Mr. Holland was terminated during the probation/trial period of his excepted-service employment. The initial Standard Forms 50 and 52, approved June 5, 2018, cited legal authority for the termination, 5 C.F.R. § 315.805, different from the authority cited in the termination letter.

On June 30, 2018, Mr. Holland appealed his termination to the Board. In early July, the administrative judge assigned to the matter issued orders calling for submissions on the issue of Board jurisdiction. On July 26, 2018, the Department of Justice submitted a letter seeking dismissal of the appeal for lack of jurisdiction. Attached to the letter was a replacement version of Standard Form 52, approved July 26, 2018, changing the authority citation from 5 C.F.R. § 315.805 to 5 U.S.C. chapter 23, consistent with the termination letter.

On October 5, 2018, an administrative judge issued an initial decision holding that the Board lacks jurisdiction to hear Mr. Holland's appeal. The administrative judge explained that Mr. Holland was not an "employee" under 5 U.S.C. § 7511(a)(1) and that the Board lacked jurisdiction over "constructive suitability determinations." *Holland v. Dep't of Justice*, 2018 WL 4914095 (M.S.P.B. Oct. 5, 2018); J.A. 3, 5. The administrative judge also determined that the Board has no jurisdiction over Mr. Holland's claims that he was subject to a prohibited personnel practice where, as here, there was no otherwise-appealable action. J.A. 5. The initial decision became the final Board decision (which we hereafter call it) when the time for full Board review passed without Mr. Holland seeking such review.

Mr. Holland timely appealed to this court. Although before the Board he made reference to a discrimination

allegation, he has dropped that allegation. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II

We affirm the Board's findings or conclusions unless they are "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). "The Board's jurisdiction is not plenary, but is limited to adverse personnel actions expressly made appealable to it by law, rule, or regulation." *Herman v. Dep't of Justice*, 193 F.3d 1375, 1378 (Fed. Cir. 1999) (citing 5 U.S.C. § 7701(a)). We decide de novo whether the Board has jurisdiction, while accepting Board findings of fact if they are supported by substantial evidence. *Parrott v. M.S.P.B.*, 519 F.3d 1328, 1334 (Fed. Cir. 2008); *Johnston v. M.S.P.B.*, 518 F.3d 905, 909 (Fed. Cir. 2008).

Mr. Holland advances several alternative bases on which, he contends, the Board has jurisdiction. We address each basis in turn. We then address his due process claim.

## A

Mr. Holland contends that the Board has jurisdiction over his appeal under 5 C.F.R. part 731 because his termination was a "suitability action." We disagree, concluding that the DEA did not actually find him unsuitable for the position. The termination decision does not on its face make, and should not be understood as making, such a finding.

A "suitability determination" is "a decision by OPM or an agency with delegated authority that a person is suitable or is not suitable for employment in covered positions in the Federal Government or a specific Federal agency." 5 C.F.R. § 731.101(b). As relevant here, a "covered position" is "a position in the excepted service where the incumbent can be noncompetitively converted to the competitive

service." *Id.* In making a suitability determination, OPM or an agency with delegated authority must rest its determination on a ground specified in an exclusive list of permissible bases, of which the only one placed in issue before this court is that the individual involved made a "[m]aterial, intentional false statement, or deception or fraud in examination or appointment." § 731.202(b)(3).

If a suitability determination is made, OPM or an agency with delegated authority may take a suitability action against that person. § 731.203(c). A "suitability action" is a cancellation of eligibility, a removal, a cancellation of reinstatement eligibility, or a debarment, § 731.203(a), and "may be taken only by OPM or an agency with delegated authority," § 731.101(b). A person against whom an agency has taken a suitability action may "appeal the action to the . . . Board." § 731.501(a).

It is undisputed that Mr. Holland was in a "covered position," but appealability would require more—namely, that a suitability action was taken against him. § 731.501(a). But nowhere did the DEA characterize its termination of Mr. Holland as a suitability action or cite the suitability regulations of 5 C.F.R. part 731. The DEA instead cited 5 U.S.C. chapter 23 as its legal authority (and, initially, another regulation unrelated to suitability). Further, in a declaration filed before the Board, the DEA's Section Chief for the Suitability Section of Human Resources stated that the "DEA did not perform a suitability review of Cameron Holland or make a negative suitability determination of Cameron Holland" and that OPM "did not issue a negative suitability determination of Cameron Holland." J.A. 286–87.

Nevertheless, Mr. Holland argues that his termination was effectively a suitability action because it rested on a determination that he had made a "[m]aterial, intentional false statement, or deception or fraud in examination or

appointment." § 731.202(b)(3). We reject Mr. Holland's re-characterization of his termination.

Section 731.202(b)(3) requires "intentional" falsity, deception, or fraud, but the DEA, in terminating Mr. Holland, did not find or assert that Mr. Holland had the intent specified in that standard. Whereas the regulation is addressed to a "[m]aterial, intentional false statement, or deception or fraud," § 731.202(b)(3), all that the DEA found was that Mr. Holland "fail[ed] to provide complete and truthful information" in [his] background investigation," J.A. 107. The declared "failure" does not imply an intent to make a false statement or to deceive or commit fraud. And the record evidence does not indicate that Mr. Holland had such intent but, rather, suggests otherwise, as reflected in the investigator's summary of the interview with Mr. Holland, discussing Mr. Holland's reliance on advice from a friend. J.A. 117.

Indeed, the Department of Justice agreed at oral argument that the DEA, in terminating Mr. Holland, did not charge him with the "mens rea" required by the particular suitability-regulation provision at issue, but was "simply looking at the discrepant information." Oral Argument at 25:25–25:48 ("[Mr. Holland] was terminated for a failure to provide complete and truthful information on his background investigation, so they weren't giving him any sort of mens rea of that. They were simply looking at the discrepant information."). The Department added that the statement in the termination letter that Mr. Holland's "conduct is incompatible with the critical duties and responsibilities of a Criminal Investigator," J.A. 107–108, also should not be read to suggest the presence of the intent required by the suitability-regulation provision at issue. Oral Argument at 26:05–26:34.

The substantive lack of fit between the suitability-regulation at issue and what the DEA decided is confirmed by the fact that the DEA did not have delegated authority

from OPM to make a suitability determination or take a suitability action against Mr. Holland. "OPM [has] retain[ed] jurisdiction to make final determinations and take actions in all suitability cases where there is evidence that there has been a material, intentional false statement, or deception or fraud in examination or appointment." 5 C.F.R. § 731.103(g). And "[a]gencies must refer these cases to OPM for suitability determinations and suitability actions under this authority" or notify OPM "if the agency wants to take, or has taken, action under its own authority." *Id.* The DEA did not do so here, which reinforces the conclusion that it was not making a suitability determination or taking a suitability action.

The Department of Justice asserts an additional ground for concluding that the DEA made no suitability determination and took no suitability action. In 2008, OPM promulgated suitability regulations and, in doing so, recognized that certain agency actions might be subject to being characterized as coming within both the suitability regulation's authority and another source of authority. OPM noted that the Board may not "hold the agency to standards relating to a legal authority that the agency did not invoke." Suitability, Supplementary Information, 73 Fed. Reg. 20,149, 20,152 (Apr. 15, 2008); *see Upshaw v. Consumer Prod. Safety Comm'n*, 2009 M.S.P.B. 74, ¶ 8 (2009) ("OPM explained that its new regulations were issued, in part, to correct Board case law which had held that 'what matters is the substance of the action, not the form,' which OPM determined to be erroneous and beyond the intent of Congress."). The Department argues that those comments show that the DEA has plenary power to determine the authority under which it terminates an employee, regardless of whether the termination substantively fits under some other authority that would give the Board jurisdiction it would otherwise lack. But we do not reach that contention, because we reject the applicability of the suitability regulations for the separate, sufficient reason that the DEA did

not actually find that Mr. Holland engaged in the intentional conduct to which the suitability-regulation provision at issue is limited.

B

Mr. Holland contends that the Board has jurisdiction over his appeal under 5 U.S.C. § 7513 because he met the definition of an "employee" under the statute. That contention is incorrect.

"[A]n employee against whom [a removal or suspension action under § 7512] is taken . . . is entitled to appeal to the Merit Systems Protection Board." 5 U.S.C. § 7513(d). Under § 7511(a)(1), there are three categories of individuals who qualify as "employees": (1) individuals in the competitive service who either do not have a probationary period under their initial appointment or have completed one year of similar service under another appointment, § 7511(a)(1)(A); (2) veteran's preference eligible individuals in the excepted service who have completed one year of service in a similar position in an executive agency, § 7511(a)(1)(B); or (3) individuals in excepted-service positions who are either not subject to a probationary period or have completed two years of current continuous service in a similar position in an executive agency, § 7511(a)(1)(C).

It is undisputed that Mr. Holland was not an employee under § 7511(a)(1)(A) or (B): he was neither in the competitive service, *see*, *e.g.*, J.A. 19 (noting that Mr. Holland's appointment was in the excepted service), nor a veteran's preference eligible individual, *see*, *e.g.*, *id.* (noting that Mr. Holland was not entitled to veteran's preference). Thus, for Mr. Holland to be an employee, he would have had to come under either of the two categories in § 7511(a)(1)(C). But he did not. Mr. Holland was not an employee under § 7511(a)(1)(C)(i) because his excepted-service appointment was subject to a two-year probationary period that he had not completed; and he was not an employee under § 7511(a)(1)(C)(ii) because he lacked the necessary prior

service in a federal executive agency. Thus, Mr. Holland was not an "employee" under § 7511 and had no right of appeal under § 7513.

C

Mr. Holland next contends that the Board has jurisdiction over his appeal under 5 C.F.R. §§ 315.805 and 315.806. He argues that his position was "some form of 'hybrid' appointment between excepted service and competitive service," Appellant's Br. at 35, due to the nature of his hiring: the "competitive and thorough process with multiple interviews, physical testing, psychological testing, polygraph testing, reference checks, credit checks, internal affairs investigations, law enforcement checks and background checks" that he went through "prior to being hired," *id.* at 36−37. We reject Mr. Holland's invocation of 5 C.F.R. §§ 315.805 and 315.806.

The Board had an ample basis for finding that Mr. Holland's position was in the excepted service. *See, e.g.*, J.A. 19 (Mr. Holland's appeal form with type of appointment marked as "excepted"); J.A. 93 (termination notice with "position occupied" marked as "excepted service"). That fact makes §§ 315.805 and 315.806 inapplicable to his termination. We have explained that sections 315.805 and 315.806 "grant to a terminated probationary employee, *but only one in the competitive service*, certain procedural rights and a right of appeal to the Board where the employee makes a non-frivolous allegation that the termination rested wholly or partly on conditions arising before appointment." *De Santis v. M.S.P.B.*, 826 F.3d 1369, 1372 (Fed. Cir. 2016) (emphasis added). Accordingly, excepted-service employees, such as Mr. Holland, "cannot invoke 5 C.F.R. §§ 315.805 and 315.806(c) to appeal [their] termination because those regulations apply only to competitive-service employees," and not to excepted-service employees. *Id.*, 826 F.3d at 1376; *see also* 5 C.F.R. § 210.101(b) ("Parts 315 through 339 of this chapter apply to all positions in the

competitive service . . . and, except as specified by or in an individual part, these parts do not apply to positions in the excepted service.").

Mr. Holland also points to the DEA's citation of § 315.805 as the legal authority for terminating his employment in the initially prepared Standard Forms 50 and 52. But "[t]he Board's jurisdiction cannot be expanded by an agency's alleged misstatements or erroneous notice of appeal rights." *Campion v. M.S.P.B.*, 326 F.3d 1210, 1215 (Fed. Cir. 2003). Here, the DEA's citation to § 315.805 in the cited Forms was a mistake. It was counter to Mr. Holland's clear actual status and to the termination letter, which cited only 5 U.S.C. chapter 23. And the DEA issued a corrected notification to invoke only 5 U.S.C. chapter 23.

Thus, the Board lacks jurisdiction to hear Mr. Holland's appeal under 5 C.F.R. §§ 315.805 and 315.806.

D

Mr. Holland's last jurisdictional contention relies on 5 U.S.C. § 2302(b), which prohibits certain personnel practices. But prohibited personnel practices of the type asserted by Mr. Holland (who, we note, does not allege reprisal for whistleblowing) "do not, in themselves, provide a basis for review by the Board" unless they are paired with an otherwise-appealable personnel action. *Brodt v. M.S.P.B.*, 11 F.3d 1060, 1061 (Fed. Cir. 1993). Mr. Holland has failed to present a separate claim to the Board over which it has jurisdiction. Thus, the Board properly dismissed the prohibited personnel action allegations for lack of jurisdiction.

E

In addition to arguing for Board jurisdiction, Mr. Holland asserts that his Fifth Amendment Due Process rights were violated. In making this contention, Mr. Holland focuses on the absence of a pre-decisional notice of and opportunity to address the basis for the termination. He

might also be suggesting that he had a due process right to Board review after the termination.

Even if we read Mr. Holland's constitutional contention broadly, we must reject it.  In this court, both the Board and the Department of Justice address the due process contention on its merits.  They do not assert that, just because we find lack of a statutory or regulatory grant of jurisdiction to the Board, we must reject the due process contention without regard to the substantive constitutional standards for when due process is required.  Rather, they assert that due process was not required here because a constitutional prerequisite to Mr. Holland's having due process rights is shown to be missing by the analysis demonstrating lack of Board jurisdiction.  We agree.

Mr. Holland's "federal constitutional due process claim depends on his having a property right in continued employment." *Stone v. Fed. Deposit Ins. Corp.*, 179 F.3d 1368, 1374 (Fed. Cir. 1999); *see Cleveland Board of Education. v. Loudermill*, 470 U.S. 532, 538 (1985) (finding state employed security guards' "federal constitutional claim depend[ed] on their having had a property right in continued employment.").[1]  And "[p]roperty interests are not created by the Constitution; 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source [such as a statute].'"  *Stone*, 179 F.3d at 1374 (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).  Here, our analysis above, in discussing Board jurisdiction, demonstrates that Mr. Holland did not have a property interest in continued employment at the time he was terminated.  He therefore

---

[1] "A Federal agency may not, consistently with the Fifth Amendment Due Process Clause, do that which a State is forbidden to do by the Fourteenth Amendment Due Process Clause."  *Stone*, 179 F.3d at 1374 n.2 (citing *Mathews v. Eldridge*, 424 U.S. 319, 332–335 (1976)).

was not entitled to due process protection for his termination.

One core rationale for providing due process is that it reduces the chance of error and thus adds to the reliability of the decision at issue. *See, e.g.*, *Loudermill*, 470 U.S. at 543; *Mathews v. Eldridge*, 424 U.S. 319, 335, 343 (1976). The absence of due process for Mr. Holland thus means that the termination decision lacks the measure of reliability that is conferred when due process is provided. That consequence may well affect how the termination is viewed in the future, but it does not alter our conclusion that Mr. Holland lacked a protected property interest that would entitle him to due process. His due process challenge fails.

## III

Mr. Holland has not established that the Board erred in determining that he lacked appeal rights under 5 C.F.R. § 731, 5 U.S.C. § 7511, or 5 C.F.R. §§ 315.805 or 315.806. Relatedly, he has not established a property interest that is a prerequisite for his due process claim. For the foregoing reasons, the decision of the Board is affirmed.

The parties shall bear their own costs.

**AFFIRMED**