NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DARIN A. JONES,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

---

2025-1318

---

Petition for review of the Merit Systems Protection Board in No. DC-1221-20-0630-W-1.

---

Decided:  April 8, 2026

---

DARIN A. JONES, Potomac, MD, pro se.

DEANNA SCHABACKER, Office of the General Counsel, United States Merit Systems Protection Board, Washington, DC, for respondent.  Also represented by KATHERINE MICHELLE SMITH.

---

Before LOURIE, DYK, and TARANTO, *Circuit Judges.*

PER CURIAM.

Darin A. Jones applied for a position with the Department of the Navy, and the Navy tentatively selected him. But the Navy rescinded the tentative job offer upon receiving from Mr. Jones a copy of his most recent Standard Form 50 (SF-50), which indicated that, years earlier, he had been terminated from a probationary role at the Federal Bureau of Investigation (FBI). Mr. Jones filed a complaint with the Office of Special Counsel (OSC), alleging that the rescission was in retaliation for protected whistleblowing disclosures and activity in violation of 5 U.S.C. § 2302(b)(8)–(9). In particular, Mr. Jones's alleged protected disclosures and activities included (1) the submission of his SF-50 to the Navy, (2) an email he sent to the Navy's relevant human resources (HR) official, and (3) his litigation of his termination from the FBI and whistleblowing asserted in that litigation.

After OSC closed its investigation, Mr. Jones filed an individual right of action (IRA) appeal with the Merit Systems Protection Board (Board). A Board-assigned administrative judge (AJ) dismissed Mr. Jones's appeal for lack of jurisdiction, and the full Board affirmed the AJ's decision but with modifications to the AJ's rationale. *See Jones v. Department of the Navy*, No. DC-1221-20-0630-W-1, 2024 WL 4589513 (M.S.P.B. Oct. 25, 2024) (*Board Decision*). Mr. Jones appeals, proceeding pro se (though he is a lawyer), as he did before the Board. We affirm.

I

Mr. Jones worked for the FBI until he was terminated in 2012, while he was still in his probationary period. *See* S. Appx. 50, 82.[1] In 2019, after applying for the position of Supervisory Contract Specialist with the Navy and completing two rounds of interviews, Mr. Jones was informed

---

[1] "S. Appx." refers to the supplemental appendix submitted with the Board's brief.

by a Navy HR official that he had been tentatively selected for the position. S. Appx. 50, 67. Afterward, in November 2019, Mr. Jones sent that official a copy of his SF-50 form, which reported his previous termination from the FBI. S. Appx. 50, 65, 82. In January 2020, two months after Mr. Jones sent his SF-50, the Navy rescinded its tentative offer. S. Appx. 85.

In May 2020, Mr. Jones filed a complaint of whistleblower reprisal with OSC, alleging retaliation for several protected disclosures and activities, including his submission of his SF-50 to the Navy HR official. *See* S. Appx. 88; Jones Opening Br. at 6–10. OSC terminated its investigation without action, and Mr. Jones appealed to the Board. S. Appx. 88–89, 77–81.

In June 2020, the Board's AJ ordered Mr. Jones to establish that the Board had jurisdiction over his appeal. S. Appx. 69. Specifically, the AJ ordered Mr. Jones to provide evidence that he had exhausted his administrative remedies and that his allegations regarding his protected disclosures and activities were nonfrivolous. S. Appx. 69–76. In his response to the order, Mr. Jones alleged that he made protected disclosures and engaged in protected activities when he (1) emailed the Navy in January 2020 to complain that it had departed from "acceptable and proper HR procedure" by not timely communicating with him after the tentative job offer was made; (2) sent the HR official his SF-50, which disclosed his FBI termination from seven years earlier even though (he alleged) disclosure of a termination more than five years earlier was not required; and (3) challenged his termination from the FBI by arguing, over several years of litigation, that he faced reprisal for disclosing the FBI's procurement violations. S. Appx. 50–61. Mr. Jones further alleged that the Navy perceived him as a whistleblower and retaliated against him by rescinding the job offer due to that perception. S. Appx. 58–60.

Without deciding the jurisdictional question, the AJ allowed Mr. Jones to conduct discovery and to file an amended jurisdictional response when discovery closed. S. Appx. 45–47. In September 2020, Mr. Jones submitted an amended jurisdictional response, not disputing who was the Navy official who made the withdrawal decision (the deciding official) and arguing that evidence of communications among that official, the Navy's HR official, and a Navy attorney regarding the job-offer rescission satisfied his jurisdictional burden. *See* S. Appx. 38–42.

In December 2020, the AJ dismissed Mr. Jones's appeal for lack of jurisdiction. S. Appx. 15. The AJ concluded that Mr. Jones failed to meet the nonfrivolous-allegation standard for any of the following assertions: (1) that either his January 2020 email to the Navy complaining about the lack of communication after receiving a tentative offer or his November 2019 SF-50 submission was a protected disclosure, *see* S. Appx. 21–28; (2) that either of those alleged disclosures contributed to the rescission of his offer, *see id.*; (3) that he administratively exhausted his claim that submitting his SF-50 to the Navy constituted a protected disclosure, *see* S. Appx. 28; or (4) that his activities challenging his FBI termination (including disclosures revealed in those activities) contributed to the Navy's rescission of its job offer to him, *see* S. Appx. 24–27. Mr. Jones sought review by the Board. *See Board Decision*, at *1.

On October 25, 2024, the Board affirmed the AJ's dismissal for lack of jurisdiction, with some modifications to the AJ's analysis. *See Board Decision*. The Board agreed with the AJ that Mr. Jones failed to nonfrivolously allege that either his November 2019 submission of his SF-50 or his January 2020 email to the HR official was a protected disclosure under 5 U.S.C. § 2302(b)(8), but it vacated the AJ's finding regarding exhaustion of administrative remedies and the finding that those disclosures contributed to the rescission of the offer. *Id.*, at *2–5.

The Board then addressed Mr. Jones's activities involving his challenges to his FBI termination, including (1) a disclosure to an Inspector General of asserted procurement problems at the FBI, and (2) litigation initiated and pressed by Mr. Jones alleging whistleblower reprisal for that disclosure. *Id.*, at \*3 n.3. The Board indicated that Mr. Jones's assertion that he disclosed procurement violations to the Inspector General constituted a nonfrivolous allegation of protected activity under 5 U.S.C. § 2302(b)(9)(C), and, "[t]o the extent his prior [FBI-termination-related] litigation sought to remedy whistleblower reprisal, it too would constitute protected activity." *Id.* At the next step of the required whistleblowing analysis, concerning whether those two protected activities were contributing factors in the Navy's job-offer withdrawal, the Board agreed with the AJ that Mr. Jones failed to make nonfrivolous allegations for that element, at bottom because the key allegations of the deciding official's actual or constructive knowledge of such activities were too speculative. *Id.*, at \*3–5.[2] Finally, for essentially the same reason, the Board affirmed the AJ's conclusion that Mr. Jones failed to nonfrivolously allege that the Navy perceived him as a whistleblower. *Id.*, at \*5. For those reasons, the Board denied Mr. Jones's petition for review. *See id.*, at \*1, \*5–6.

Mr. Jones appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(9).

---

[2]    The Board noted that the AJ, as to actual knowledge, had mistakenly relied in part on materials not appropriate for consideration at the threshold jurisdictional stage and, as to constructive knowledge, had not addressed the key question. *Id.*, at \*4–5. The Board did not consider the evidence on which the AJ had mistakenly relied regarding actual knowledge, and the Board itself addressed the key constructive-knowledge issue that the AJ had not addressed.

## II

### A

We may set aside the Board's decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We review without deference the Board's jurisdiction to adjudicate an appeal. *Johnston v. Merit Systems Protection Board*, 518 F.3d 905, 909 (Fed. Cir. 2008). If Board factual findings are at issue, we review them for substantial-evidence support, *see McGuffin v. Social Security Administration*, 942 F.3d 1099, 1107 (Fed. Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

For the Board to have jurisdiction over an IRA appeal relating to a claim of whistleblowing reprisal, the petitioner must first exhaust his administrative remedies before OSC. *See Cahill v. Merit Systems Protection Board*, 821 F.3d 1370, 1373 (Fed. Cir. 2016); 5 U.S.C. § 1221(e)(1). The petitioner must also nonfrivolously allege to the Board that (1) he made a protected disclosure under 5 U.S.C. § 2302(b)(8) or engaged in a protected activity under 5 U.S.C. § 2302(b)(9), and (2) his protected disclosure or activity contributed to the Navy's decision to take a personnel action under 5 U.S.C. § 2302(a). *See Cahill*, 821 F.3d at 1373; *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1367–70 (Fed. Cir. 2020).

As relevant to Mr. Jones's challenges to the Board's decision regarding his alleged protected activities and disclosures, "[a] nonfrivolous allegation is an assertion that, if proven, could establish the matter at issue" and that "(1) is more than conclusory; (2) is plausible on its face; and (3) is material to the legal issues in the appeal." 5 C.F.R.

§ 1201.4(s); *see Hessami*, 979 F.3d at 1369 & n.5 (analogizing 5 C.F.R. § 1201.4(s)'s requirements to the standard governing complaints in district court and stating that the determination whether there is "a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009))).  Moreover, a nonfrivolous allegation of a protected disclosure under 5 U.S.C. § 2302(b)(8) requires at least allegations of fact that, if true, could demonstrate that the petitioner reasonably believed that his disclosure evidenced "any violation of any law, rule, or regulation, or . . . gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety."  5 U.S.C. § 2302(b)(8)(A); *see Cahill*, 821 F.3d at 1373; *Hessami*, 979 F.3d at 1370.  "Whether a[] [petitioner] has such a reasonable belief is determined by an objective test: whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the [petitioner] would reasonably conclude that the actions of the government evidence wrongdoing as defined by the Whistleblower Protection Act."  *Young v. Merit Systems Protection Board*, 961 F.3d 1323, 1328 (Fed. Cir. 2020) (citing *Giove v. Department of Transportation*, 230 F.3d 1333, 1338 (Fed. Cir. 2000)).

For the "contributing factor" portion of the whistleblower claim analysis, a petitioner can establish that a relevant official possessed knowledge of the petitioner's whistleblowing activity by invoking the "knowledge/timing" test.  *See Kewley v. Department of Health and Human Services*, 153 F.3d 1357, 1362 (Fed. Cir. 1998) (explaining that, under 5 U.S.C. § 1221(e)(1), "circumstantial evidence of knowledge of the protected disclosure and a reasonable relationship between the time of the protected disclosure and the time of the personnel action will establish, *prima facie,* that the disclosure was a contributing factor to the personnel action" (internal citation omitted)).

## B

We conclude that the Board correctly determined that Mr. Jones failed to make nonfrivolous allegations of the protected-disclosure character of either his submission of the SF-50 or his January 2020 email to HR. As to the Board's ruling that he failed to nonfrivolously allege that his FBI-termination-related activities (*i.e.*, his litigation of his termination and the whistleblowing charge made in that litigation) were a contributing factor in the Navy's decision to rescind the offer, we conclude that Mr. Jones (a lawyer) has forfeited a challenge to that ruling by making no coherent, developed argument against the Board's application of the jurisdictional standard to the knowledge/timing analysis. We find no merit in any of Mr. Jones's discernible challenges to the Board's decision. We therefore affirm.

## 1

Mr. Jones contests the Board's conclusion that he did not nonfrivolously allege the protected-disclosure character of either his January 2020 email or his November 2019 submission of his SF-50. *See* Jones Opening Br. at 12–14. His argument is discernible and straightforward. He argues that the Board failed to ask "whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the [petitioner] could reasonably conclude that the disclosure evidenced one of the circumstances described in 5 U.S.C. § 2302(b)(8)," *Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, 552 (2016). *See* Jones Opening Br. at 13. We reject this argument.

The Board explicitly invoked the "disinterested observer" test in coming to its conclusion that Mr. Jones's "vague" email allegations that the Navy violated "acceptable and proper HR procedure" did not "disclos[e] HR improprieties" and therefore did not constitute allegations of a protected disclosure under the relevant portion of 5 U.S.C.

§ 2302(b)(8).  *Board Decision*, at \*2.  The Board again in-
voked the "disinterested observer" test in its analysis of the
SF-50 disclosure at issue and concluded that, notwith-
standing Mr. Jones's "apparent belief that the [Navy] im-
properly required h[i]m to submit" the SF-50, his belief
that submission was required did not make his submission
of the form a protected disclosure under 5 U.S.C.
§ 2302(b)(8).  *Id.*, at \*3.  The Board properly applied the
correct standard for determining whether Mr. Jones's alle-
gations of disclosures were nonfrivolous and correctly con-
cluded that he alleged no reasonable belief of any violation
of a law, rule, or regulation.  *See id.*, at \*2–3.  We therefore
affirm the Board's conclusion that Mr. Jones's 2020 email
and 2019 submission of his SF-50 were not adequately al-
leged to be protected disclosures.  The dismissal of those
grounds for the IRA appeal is affirmed.

2

Mr. Jones expresses disagreement with the Board's
dismissal of his claim of whistleblowing reprisal for his ac-
tivities challenging his FBI termination (*i.e.*, his litigation
of his termination and the whistleblowing charge made in
that litigation).  *See* Jones Opening Br. at 5, 13–15, 26.  On
this issue, however, unlike the protected-character issue
just discussed, we find Mr. Jones's presentation to us in-
sufficient to preserve a challenge.  He does not even discuss
the knowledge/timing test applied by the Board.  And, what
is enough given the nature of this issue, he neither pin-
points nor presents a coherent, developed argument ex-
plaining how the Board erred in concluding that his key
assertions were too speculative to pass muster under the
jurisdictional requirements of being plausible and not con-
clusory.  For that reason, we conclude that Mr. Jones has
forfeited any challenge to this ruling of the Board.

3

Mr. Jones challenges the Board's conclusion that he
failed to nonfrivolously allege that the Navy retaliated

against him as a perceived whistleblower. *See* Jones Opening Br. at 13–15. He argues that the AJ should have certified an interlocutory review to determine whether the Board can assert jurisdiction over a claim involving perceived protected activity under 5 U.S.C. § 2302(b)(9)(A). *See* Jones Opening Br. at 13–14. We reject this contention. The Board correctly ruled that Mr. Jones forfeited the opportunity for interlocutory review by failing to seek the certification of an interlocutory appeal before the AJ. *See Board Decision*, at \*5 (citing 5 C.F.R. § 1201.93(a) and *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980)). We see no abuse of discretion by the AJ in not independently certifying the perceived-whistleblower issue for interlocutory review by the Board pursuant to 5 C.F.R. § 1201.91. *See Herman v. Department of Justice*, 119 M.S.P.R. 642, 647–48 & n.3 (2013).

In any event, this issue is mooted by the Board's issuance of a final decision addressing Mr. Jones's arguments on their merits—a decision we find no warrant for disturbing. *See id.* at 648 n.3. In particular, we do not disturb the Board's dismissal of Mr. Jones's contention regarding the FBI-termination-related activities for want of adequate allegations of the deciding official's actual or constructive knowledge, and Mr. Jones's argument that he was perceived by the Navy as a whistleblower is largely based on that contention. *See* Jones Opening Br. at 6, 13; Board Informal Response Br. at 23–24.

4

Mr. Jones makes other discrete assertions of Board error, none of which is persuasive.

First, Mr. Jones contends that the Board "failed to adjudicate that (1) the vacancy announcement did not require or even request [ ] any [termination-related SF-50] disclosure, and (2) Jones was not asked during either of his two interviews why he left the FBI." Jones Opening Br. at 12. He adds that he was not required to disclose his FBI

termination under any Office of Personnel Management policy. *Id.* But these assertions do not identify any Board error separate from the Board's rulings on the asserted protected disclosures. The Board had no obligation to consider these factual issues before answering the threshold jurisdictional question. *See Cahill*, 821 F.3d at 1373–75. And, as discussed, *see supra* p.9, Mr. Jones's belief that he was not required to submit his FBI SF-50 to the Navy does not demonstrate that his allegations of a protected disclosure were nonfrivolous. *See Board Decision*, at *3.

Additionally, Mr. Jones asserts that the Board failed to "properly account for all of [his] whistleblower and perceived whistleblower claims." Jones Opening Br. at 11 (capitalization altered). This assertion is not sufficiently specific or substantiated to add anything to the matters we have discussed above.

Mr. Jones further argues that the AJ "erred in 'weighing evidence', 'resolv(ing) conflicting assertions', and finding 'the [Navy's] evidence' 'dispositive.'" *Id.* at 13. But it is the Board's decision that is before us, and the Board did not weigh evidence, or rely on any AJ weighing of evidence, in making its jurisdictional decision. It merely determined whether the allegations were "more than conclusory" and "plausible." 5 C.F.R. § 1201.4(s); *e.g.*, *Board Decision*, at *2 & n.2.

Mr. Jones argues that the AJ showed a "deep-seated favoritism for the [Navy]," resulting in "multiple errors of fact and law." Jones Opening Br. at 15–18. His only evidence in support of this contention is the fact, noted by the AJ herself, that part of the initial decision was copied from the Navy's narrative response. *See* Jones Opening Br. at 16; S. Appx. 16 n.3. As the Board held, however, *see Board Decision*, at *5, this is not enough to show "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of Army*, 287 F.3d 1358,

1362 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

## III

Mr. Jones's remaining arguments are unpersuasive or immaterial to the outcome. We therefore affirm the Board's final decision.

The parties shall bear their own costs.

**AFFIRMED**